EXHIBIT "A"



# Internal Revenue Service
## United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

# Account Transcript

|  |  |
|---|---|
| Request Date: | 08-10-2022 |
| Response Date: | 08-10-2022 |
| Tracking Number: | 102442307751 |

FORM NUMBER:     CIVIL PENALTY

TAX PERIOD:     Dec. 31, 2017

TAXPAYER IDENTIFICATION NUMBER: XX-XXX5740

SCHO COMM CCLL DIS

18600

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE:                    $0.00

ACCRUED INTEREST:                   $0.00 AS OF: Aug. 22, 2022

ACCRUED PENALTY:                    $0.00 AS OF:

ACCOUNT BALANCE PLUS ACCRUALS
(THIS IS NOT A PAYOFF AMOUNT):      $0.00

     ** INFORMATION FROM THE RETURN OR AS ADJUSTED **

TAX PER TAXPAYER:                   0.00

## TRANSACTIONS

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 240 | Miscellaneous penalty | 201947 | 12-09-2019 | $219,900.00 |
|  | 12-09-2029 |  |  |  |
| n/a | 28354-722-52310-9 |  |  |  |
| 971 | Tax period blocked from automated levy program |  | 02-03-2020 | $0.00 |

| 971 | Collection due process Notice of Intent to Levy -- issued | | 09-14-2020 | $0.00 |
| 971 | Collection due process Notice of Intent to Levy -- return receipt signed | | 10-09-2020 | $0.00 |
| 971 | First Levy Issued on Module | | 03-12-2021 | $0.00 |
| 582 | Lien placed on assets due to balance owed | | 03-19-2021 | $0.00 |
| 971 | Issued notice of lien filing and right to Collection Due Process hearing | | 03-25-2021 | $0.00 |
| 670 | Payment<br>Levy | | 07-20-2021 | -$233,375.63 |
| 196 | Interest charged for late payment | 202130 | 08-16-2021 | $13,475.63 |
| 960 | Appointed representative | | 08-11-2021 | $0.00 |
| 583 | Removed lien | | 09-03-2021 | $0.00 |

<div style="border: 2px solid black; padding: 10px; text-align: center;">

This Product Contains Sensitive Taxpayer Data

</div>

EXHIBIT "B"

LAWRENCE B. LEVY*△

DAVID A. KROPP, C.P.A.+
AMY SEXTON, C.P.A.

BIANCA ASMAR, ESQ.**
E. DAVID BROCKMAN, ESQ.†
DANIELLE BEYDA, ESQ.***

CLAIRE COFFEY, E.A.∞
GREG MAHAFFEY, E.A.∞
DANIEL MARINE, E.A.
PETER SALINGER, E.A.∞
MARCELO SCHILLER, E.A.

## LEVY & ASSOCIATES, INC.
28400 SOUTHFIELD ROAD
LATHRUP VILLAGE, MI 48076
TEL (248) 557-4048 FACSIMILE (248) 443-1642

+MEMBER
MICHIGAN ASSOCIATION OF
CERTIFIED PUBLIC ACCOUNTANTS

*MEMBER
NATIONAL SOCIETY OF ACCOUNTANTS

**MEMBER
MICHIGAN BAR ASSOCIATION

‡ MEMBER
MICHIGAN BAR ASSOCIATION
Licensed to Practice in
US Tax Court and Pennsylvania

***MEMBER
FLORIDA BAR ASSOCIATION

•MEMBER
CALIFORNIA BAR ASSOCIATION

◊MEMBER
AMERICAN BAR ASSOCIATION

△AMERICAN SOCIETY OF TAX
PROBLEM SOLVERS

∞FORMER IRS REVENUE OFFICER

† FORMER MICHIGAN
ASSISTANT ATTORNEY GENERAL

August 16, 2021

Internal Revenue Service
Attn: Tonlessia Williams
38275 W. 12 Mile Road
Suite 200
Farmington Hills, MI 48331

RE: **Request for Appeals Consideration**
     **Schoolcraft Community College District**
     **ID#**
     **Tax Periods: 12/31/2017, 6/30/2019**

Please accept this as our request to appeal the denial of the W-2/W-3 penalty and the FTD penalty for the above reference tax periods. We disagree with your determination that reasonable cause does not exist to support abatement of said penalties. Your determination was transmitted to us via Letter 2413(P) on August 6, 2021.

The name and the address of the taxpayer is:

Schoolcraft Community College District
18600 Haggerty Road
Livonia, NI 48152

We have attached two additional documents that should be forwarded to Appeals with this request. We reserve the right to provide additional documentation at the Appeals conference.

"Under penalties of perjury, I declare that the facts presented in my statement of disputed issues. Which are set out in the accompanying statements of facts, schedules, and other attached statements are, to the best of my knowledge and belief, true, correct, and complete. The Appeals conference should be held with my power of attorney Peter Salinger.

Please let me know if you have any questions or concerns.

Sincerely,

Peter Salinger, EA

Levy & Associates, Inc.

EXHIBIT "C"

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: |
|---|---|

AGM reviewed the appeal documents submitted by the poa. AGM concur with RO forwarding the documents to Ogden for appeals consideration per the IRM requirement.

ACTION DATE: 08/17/2021   SYSTEM DATE: 08/17/2021   CONTACT: OTHER   CREATE ID: 22044617

GENERAL HISTORY

I forwarded the tp's penalty abatement appeals consideration to the Appeals Unit in Ogden today after AGM input concurrence into ICS history.  The following documents were included:

-Fax Cover Page
-Request for Appeals Consideration Letter
-Form 2848 (Peter Salinger, EA)
-Form 2848 (Scott G. Wallace)
-Copy of Letter 2413(P)
-Affidavit from previous POA
-Letter of Explanation from Schoolcraft Community College District
-ICS History
-2 copies of the Form 3210

PLAN OF ACTION:  Request that the case be placed into the Appeals Hold File and complete the closing narrative.

ACTION DATE: 08/18/2021   SYSTEM DATE: 08/18/2021   CONTACT: OTHER   CREATE ID: 22044617

GENERAL HISTORY
CLOSING NARRATIVE

CLOSING NARRATIVE                                                          (b)(3):26 U.S.C.
                                                                          § 6103

941 INFO : Filing, Type of Depositor - LFR (per BMFOLI), 01/201906.  The tp is a S-WKLY/DAILY/S-WKLY depositor as the Form 941 filing for the 2nd QTR of 2019.

          : Current FTD - There are FTDs on the below-listed tax modules (the corresponding Form 941 returns were secured and submitted for processing on 08/09/2021 for all tax modules listed below except 01/202109):

01 201903 2,379,258-
01 201909 2,438,976-
01 201912 3,239,168-
01 202003 2,472,286-
01 202006 3,554,036-
01 202009 2,399,866-
01 202012 3,390,628-
01 202103 2,413,494-
01 202106 3,678,943-

EXHIBIT "D"

Form **843**
(Rev. August 2011)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

► See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:
- (a) a refund of one of the taxes (other than income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding) or a fee, shown on line 3,
- (b) an abatement of FUTA tax or certain excise taxes, or
- (c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

Do not use Form 843 if your claim or request involves:
- (a) an overpayment of income taxes or an employer's claim for FICA tax, RRTA tax, or income tax withholding (use the appropriate amended tax return),
- (b) a refund of excise taxes based on the nontaxable use or sale of fuels, or
- (c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name(s) | Your social security number |
|---|---|
| Schoolcraft Community College District | |
| Address (number, street, and room or suite no.) | Spouse's social security number |
| 18600 Haggerty Rd | |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| Livonia, MI 48152 | |
| Name and address shown on return if different from above | Daytime telephone number |
| | 248.557.4048 |

| | | | | |
|---|---|---|---|---|
| **1** | **Period.** Prepare a separate Form 843 for each tax period or fee year. | | **2** | **Amount to be refunded or abated:** |
| | From  01/01/2017  to  12/31/2017 | | | $ 219,900 |

**3** **Type of tax or fee.** Indicate the type of tax or fee to be refunded or abated or to which the interest, penalty, or addition to tax is related.

☐ Employment   ☐ Estate   ☐ Gift   ☐ Excise   ☐ Income   ☐ Fee

**4** **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section:   6721 Failure to File Inf Ret

**5a** **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)

☐ Interest was assessed as a result of IRS errors or delays.

☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.

☑ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

**b** Date(s) of payment(s) ►   7/20/2021   $233,375.63

**6** **Original return.** Indicate the type of fee or return, if any, filed to which the tax, interest, penalty, or addition to tax relates.

☐ 706   ☐ 709   ☐ 940   ☐ 941   ☐ 943   ☐ 945
☐ 990-PF   ☐ 1040   ☐ 1120   ☐ 4720   ☑ Other (specify) ►   IRC 6721

**7** **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

Taxpayer requests reasonable cause abatement of the failure to file information return timely, or Appeals' review. IRS issued L2413P dated 8/6/21 and prior POA requested Appeal on 8/16/2021 (see faxes attached). Appeal was never assigned by IRS and IRS levy proceeds were received to fully pay info penalty on 7/20/21.  See attached letters from taxpayer and prior POA that explain the W-2/W-3 were timely issued and transmitted to SSA. It's unclear why the electronic submission was either not accepted or even timely input, but the taxpayer operated on good faith in meeting the W-2/3 issuance and filing requirements.  We have been attempting to resolve during the Covid lockdown.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| | | |
|---|---|---|
| Signature (Title, if applicable. Claims by corporations must be signed by an officer.) | | Date |
| Signature (spouse, if joint return) | | Date |

| Paid Preparer Use Only | Print/Type preparer's name  Gregory T. Wert, EA 0315-03564R | Preparer's signature | Date  9/13/2022 | Check ☐ if self-employed | PTIN  P02524430 |
|---|---|---|---|---|---|
| | Firm's name  ► Levy Tax Professionals | | | Firm's EIN ► | 20-8739721 |
| | Firm's address  ► 28400 Southfield Rd, Lathrup Village, MI 48076 | | | Phone no. | 248.557.4048 |

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.      Cat. No. 10180R      Form **843** (Rev. 8-2011)

EXHIBIT "E"

 **IRS** Department of the Treasury
Internal Revenue Service

PHILADELPHIA PA 19255-0033

In reply refer to:  0584122327
Jan. 03, 2023  LTR 5825C    3
38-1685740   201712 13        1
00035866
BODC: TE





SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE  MI  48076-2820

025882

Taxpayer identification number:
Tax periods:  Dec. 31, 2017

Form:  Civil Penalty

Dear Taxpayer:

We haven't resolved this matter because we haven't completed all the
processing necessary for a complete response. We'll contact you
again within 60 days with our reply. You don't need to do anything
else for now.

If you have questions, you can call Customer Service at
1-800-829-0115 between 8:00 am and 12:00 am EST.

If you prefer, you can write to us at the address at the top of the
first page of this letter.

When you write, include this letter and provide in the spaces below,
your telephone number and the hours we can reach you. Keep a copy of
this letter for your records.

Telephone number (____)_____   Hours _____

Thank you for your cooperation.

Sincerely yours,

Debra Jackson
Operations Manager, Doc Matching

EXHIBIT "F"

 **IRS** Department of the Treasury
Internal Revenue Service

IRS IRP
Philadelphia   PA   19255-0633

In reply refer to:   0583658151
Jan. 05, 2023   LTR 5825C    3
38-1685740   201712 13        1
                             00019098
                    BODC: NOBOD





SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE  MI  48076-2820

012988

          Taxpayer identification number:
                    Tax periods:  Dec. 31, 2017

                    Form:  CIV PEN

Dear Taxpayer:

We haven't resolved this matter because we haven't completed all the
processing necessary for a complete response. We'll contact you
again within 90 days with our reply. You don't need to do anything
else for now.

If you have questions, you can call Toll Free at
1-800-829-0115 between 7:00 a.m. and 7:00 p.m. EST.

If you prefer, you can write to us at the address at the top of the
first page of this letter.

When you write, include this letter and provide in the spaces below,
your telephone number and the hours we can reach you. Keep a copy of
this letter for your records.

Telephone number (____)_____  Hours _____

Thank you for your cooperation.

                              Sincerely yours,

                              Debra Jackson
                              Operations Manager, Doc Matching

EXHIBIT "G"



IRS **IRS** Department of the Treasury
Internal Revenue Service
IRS IRP
Philadelphia PA 19255-0633

In reply refer to: 0583658151
Mar. 15, 2023 LTR 5825C 3
38-1685740 201712 13 1
00043909
BODC: NOBOD

SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE MI 48076-2820

038436

> Taxpayer identification number:
> Tax periods: Dec. 31, 2017
>
> Form: CIV PEN

Dear Taxpayer:

We haven't resolved this matter because we haven't completed all the
processing necessary for a complete response. We'll contact you
again within 90 days with our reply. You don't need to do anything
else for now.

If you have questions, you can call Toll Free at
1-800-829-0115 between 7:00 a.m. and 7:00 p.m. EST.

If you prefer, you can write to us at the address at the top of the
first page of this letter.

When you write, include this letter and provide in the spaces below,
your telephone number and the hours we can reach you. Keep a copy of
this letter for your records.

Telephone number (____)_____ Hours _____

Thank you for your cooperation.

Sincerely yours,

Debra Jackson
Operations Manager, Doc Matching

EXHIBIT "H"

 **IRS** Department of the Treasury
Internal Revenue Service
IRS IRP
Philadelphia  PA  19255-0633

In reply refer to:  0583921883
Jan. 26, 2023    LTR 854C    3
38-1685740    201712 13          1
Input Op:  0583921883 00002962
                              BODC: TE

SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE  MI  48076-2820

009851

                Taxpayer identification number:  ~~__ ____.__~~
                        Tax periods: Dec. 31, 2017

                            Form: W-2

                    Kind of Penalty: Late Filing

Dear Taxpayer:

Thank you for your inquiry dated Sep. 28, 2022.

The information you submitted doesn't establish reasonable cause or
show due diligence. Therefore, we must deny your request for penalty
adjustment.

Research shows that you filed 1 W-2 on Apr. 19, 2018 and filed 2,199
W-2s on Aug. 1, 2018.

We could not abate your penalty for the late filing of Forms W-2
because they were due by January 31.  Please provide a reasonable
cause explanation to show you acted in a responsible manner before and
after the failure.  Include action taken when you found the error and
to prevent it in the future. The penalty was assessed for $219,900.00.

If you want to appeal or give us more information, the following
will be helpful.

APPEALS PROCEDURES

If you have additional information and want your case to receive
further consideration by the IRS Independent Office of Appeals,
provide a detailed written statement of the dispute issues, along
with supporting documentation, to the Service Center Penalty Appeals
Coordinator within 60 days from the date of this letter. It must
include:

    1. Your name and address
    2. Your taxpayer identification number (Social Security number,
       individual taxpayer identification number, or employer

```
                                                            0583921883
                                     Jan. 26, 2023    LTR 854C    3
                                     38-1685740    201712 13          1
                                     Input Op:  0583921883 00002963
```

SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE  MI   48076-2820


      identification number)
   3. A statement that you want to appeal the findings
   4. A statement of facts supporting your position on the issues
      you are appealing
   5. If possible, a statement outlining the law or other authority
      on which you rely
   6. A copy of your original request, if available; and
   7. A copy of this letter

The statement of facts, in 4 above, should be detailed and complete,
including specific dates, names, amounts, and locations. You must
declare the statement true under penalties of perjury. You may do
this by adding to your statement the following signed declaration:

"Under penalties of perjury, I declare that the facts presented in my
written protest, which are set out in the accompanying statement of
facts, schedules, and other statements are, to the best of my
knowledge and belief, true, correct, and complete."

If your authorized representative sends us the protest for you, he
or she may substitute a declaration stating that he or she prepared
the statement and accompanying documents and whether he or she knows
that the statement and accompanying documents are true and correct.

Please send your response to:

   Internal Revenue Service
   Service Center Penalty Appeals Coordinator
   Attn:  KRISTINE M CUTHBERT
          IRS IRP
          Philadelphia  PA  19255-0633

The Service Center Penalty Appeals Coordinator will review your appeal
information to determine whether the penalty should be removed or
reduced. If your appeal can't be resolved immediately with the
additional information, the coordinator will send your written
statement to the Appeals Office serving your district.

REPRESENTATION

An attorney, certified public accountant, or person enrolled to
practice before the IRS can represent you. To have someone represent
you, attach a Form 2848, Power of Attorney and Declaration of
Representative, (or similar written authorization) to your written
statement.





009851

```
                                          0583921883
            Jan. 26, 2023    LTR 854C    3
            38-1685740    201712 13        1
            Input Op:  0583921883 00002964
```

SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE  MI  48076-2820

Forms, instructions, and Treasury Department Circular 230,
Regulations Governing Practice before the Internal Revenue Service,
are available at IRS.gov/forms or by calling 800-TAX-FORM
(800-829-3676).

OTHER INFORMATION

If taxes are overdue on your account, you'll continue to receive
bills, even if you appeal the penalty. If you decide to appeal, you
can pay the penalty to avoid further interest charges on the penalty
amount. If you appeal the penalty and the Appeals Officer determines
you aren't required to pay it, we'll adjust your account and send you
a refund.

If you don't appeal, you can file a claim for refund after you pay the
penalty. If you want to take your case to court immediately, you
should request, in writing, that your claim for refund be immediately
rejected. Then you'll be issued a notice of disallowance. You
generally have two years from the date of the notice of disallowance
to bring suit in the United States District Court having jurisdiction
or in the United States Court of Federal Claims.

Find tax forms or publications by visiting IRS.gov/forms or calling
800-TAX-FORM (800-829-3676).

If you have questions, you can call 800-829-0115.

If you prefer, you can write to us at the address at the top of the
first page of this letter.

When you write, include a copy of this letter, and provide your
telephone number and the hours we can reach you.

Keep a copy of this letter for your records.

Thank you for your cooperation.

```
                                                       0583921883
                              Jan. 26, 2023   LTR 854C    3
                              38-1685740    201712 13          1
                              Input Op:  0583921883 00002965
```

SCHOOLCRAFT COMMUNITY COLLEGE DIST
% RICHARD SCHUNNEMAN
28400 SOUTHFIELD RD
LATHRUP VILLAGE  MI  48076~2820


                         Sincerely yours,

                         *Tiffany Vertison-Cole*

                         Tiffany Vertison-Cole, Acting,
                         Director, Exam/AUR-Memphis

Enclosures:

EXHIBIT "I"

**LEVY& ASSOCIATES, INC.**
28400 SOUTHFIELD ROAD
LATHRUP VILLAGE, MI 48076
TEL (248) 557-4048 FACSIMILE (248) 443-1642

LAWRENCE B. LEVY ^

DAVID A. KROPP, C.P.A.+

BIANCA ASMAR, ESQ.**
E. DAVID BROCKMAN, ESQ.†
DANIELLE BEYDA, ESQ.***

CLAIRE COFFEY, E.A. oo
ANNA MACE, E.A. oo
DANIEL MARINE, E.A.
GREGORY MAHAFFEY, E.A. oo
GREGORY T. WERT, E.A. oo #

+MEMBER
MICHIGAN ASSOCIATION OF
CERTIFIED PUBLIC ACCOUNTANTS

*MEMBER
NATIONAL SOCIETY OF ACCOUNTANTS

**MEMBER
MICHIGAN BAR ASSOCIATION

J MEMBER
MICHIGAN BAR ASSOCIATION
Licensed to Practice in
US Tax Court and Pennsylvania

***MEMBER
FLORIDA BAR ASSOCIATION

# FORMER IRS APPEALS OFFICER

MEMBER
AMERICAN BAR ASSOCIATION

^ AMERICAN SOCIETY OF TAX
PROBLEM SOLVERS

oo FORMER IRS REVENUE OFFICER

† FORMER MICHIGAN
ASSISTANT ATTORNEY GENERAL

February 16, 2023

Attn:  Kristine M. Cuthbert                         VIA REGULAR MAIL
Internal Revenue Service
Service Center Penalty Appeals Coordinator
IRS IRP
Philadelphia, PA  19255-0633

RE:  Schoolcraft Community College District ("Taxpayer")
EIN:
Period: 13-201712
Form: W-2
Penalty:  Late filing
Amount:  $219,000.00

## REQUEST FOR PENALTY APPEAL

Dear Ms. Cuthbert:

In accordance with your Letter 854C we are requesting further consideration by the Independent Office of Appeals.  Based on IRC § 6651(a)(1) we are requesting reasonable cause abatement because the delay in filing was not due to willful neglect because the Taxpayer believed their employee tasked with preparing and filing the Forms W-2/3 had properly fulfilled their responsibilities.   The Taxpayer is a public community college in S.E. Michigan and the payroll official reports directly to the president of the college.   Based on the internal documents provided the financial officials believed that the legal requirements were met for the preparation and filing of the W-2s/3. We have been attempting to resolve this penalty throughout the Covid government shutdowns, and at one point we believed it was resolved with an abatement but yet the penalty still remains and we request further consideration by Appeals in a face to face conference in the Detroit Appeals office.

## ISSUE

1) **Should taxpayer be liable for IRC 6651(a)(1) penalty for 2021?**  This section provides for relief from the penalty assessment based on reasonable cause consideration when the Taxpayer's actions were not willful neglect.

## DISCUSSION AND ANALYSIS

The Taxpayer engaged Levy and Associates in July of 2021, for tax preparation and resolution services.  Since then we have been assisting the Taxpayer in meeting all of their tax obligations, which we believe have been beneficial to IRS and the Taxpayer. Please see the attached statement of Susan Sather regarding her efforts to meet her the tax requirements of this form. She believed in good faith that the requirements were met and while it's possible that she erred in the performance of her duties, that does not meant the elements of reasonable care were not met per IRC 6551(a)(1).

## Qualified Offer Settlement

IRM 8.22.8.15 discusses the Qualified Offer process available in IRC 7430(g)(1).  If reasonable cause or hazards reductions are unavailable we request a Qualified Offer under procedures of IRC 7430(g)(1) and propose payment amounts based on the original tax (including interest) in the amount of $5,000.

## CONCLUSION

In conclusion, the late filing penalty of $219,000 should be abated because the Taxpayer operated in good faith to meet his filing requirement for 2017.  Furthermore, based on reasonable cause with no willful neglect of the filing requirements, based on provisions of IRM 20.1.1.3.2 ordinary business care and prudence, the penalty should be abated since the Taxpayer relied on the efforts of their employee who was directed to meet the IRS requirements.  If for some reason the penalties were found applicable we believe the $219,000 penalty is excessive and should be reduced to $5,000 through procedures of IRM 8.22.8.15..

## POWER OF ATTORNEY

Copies of Power of Attorney have been previously filed with the IRS CAF Unit authorizing Gregory T. Wert, EA to represent the taxpayer in this matter, and copies of Forms 2848 are attached to this letter.

## DECLARATION OF AGENT

Under penalty of perjury, I declare that I prepared this protest and accompanying documents.  Although I do not know of my own knowledge that the facts contained herein and accompanying documents are true and correct, on the basis of information furnished to me I believe them to be true and correct.

If you should have any further questions, or require further information, please contact our office at (248) 557-4048.

Thank you for your assistance,

Gregory T. Wert, EA
0315-03564R

Enc. Copies of Forms 2848 and 843; and prior correspondence

EXHIBIT "J"

 **IRS** Department of the Treasury
Internal Revenue Service

PHILADELPHIA PA 19255-0533

In reply refer to: 0583665218
Apr. 27, 2023   LTR 86C   0
38-1685740   000000 00
                    00000146
BODC: TE



SCHOOLCRAFT COMMUNITY COLLEGE DIST
18600 HAGGERTY RD
LIVONIA MI 48152-3932

000024

Taxpayer identification number: ___ .
         Tax periods: Dec. 31, 2018

Dear Taxpayer:

We're sending your request, dated Dec. 31, 2022, to the office
at the address at the end of this letter because:

We believe that office can best process your request and answer your
questions.

That office will contact you within 90 days.

Find tax forms or publications by visiting www.irs.gov/forms or
calling 800-TAX-FORM (800-829-3676).

If you have questions, you can call Ms Scales at
267-466-5105 between 8:00 a.m. and 4:30 p.m. EDT.

If you prefer, you can write to the address at the top of the first
page of this letter.

When you write, include a copy of this letter, and provide your
telephone number and the hours we can reach you in the spaces below.

Telephone number ( )_____ Hours _____

Keep a copy of this letter for your records.

Thank you for your cooperation.

```
                                                              0583665218
                                  Apr. 27, 2023    LTR 86C   0
                                  38-1685740    000000 00
                                                              00000147
```

SCHOOLCRAFT COMMUNITY COLLEGE DIST
18600 HAGGERTY RD
LIVONIA  MI  48152-3932


                        Sincerely yours,

                        Debra Jackson
                        Operations Manager, Doc Matching

```
                                                           0583665218
                                        Apr. 27, 2023    LTR 86C    0
                                        38-1685740    000000 00
                                                               00000148
```

SCHOOLCRAFT COMMUNITY COLLEGE DIST
18600 HAGGERTY RD
LIVONIA  MI  48152-3932

000024

To:  Independent Office of Appeals
     3211 S Northpointe Drice
     Mailstop: 55205
     Fresno, CA 93725

EXHIBIT "K"

8/4/2021

Schoolcraft College
18600 Haggerty Rd
Livonia, MI 48152

To Whom It May Concern:

Our Form 941's are processed in house and mailed using a central mailing depository or taken directly to the local post office for mailing. Once they are mailed we have no way of tracking where they go or why they do not reach the IRS Office. We will begin to use a third party processor with the 3rd quarter 2021 Form 941 to ensure the forms are received timely by the IRS.

Regarding the electronic Filing of the Form W-2 for calendar year ending 12/31/2017, all W-2's were made available to employees prior to January 31, 2018. We mailed the W-2's to those who had not elected to receive them electronically on Tuesday January 30, 2018. The notice that the W-2's were made available to employees was sent to all employees on Monday January 29, 2018. We finalized the W-2 process on Friday, January 26, 2018. I do not know why the file was not processed through the BSO site at that time. I do know that I became aware the file was not received by BSO when an employee contacted me regarding their Social Security wage information not being updated. At that I looked into the situation and followed up with the individual who processed our electronic files. That individual no longer works for me.

Due to the above situations we have taken a look at our processes and are making adjustments to areas that need more oversight. We have some very talented new employees to our area and I am quite sure this situation will not recur in the future.

Sincerely,

Susan Sather
Sr. Director of Compensation, Benefits, & College Disbursements
734-462-4484

EXHIBIT "L"

**Susan E. Sather**

**To:** Kim George
**Subject:** RE: 2017 W-2's Available on Web Advisor

**From:** Ann M. White <awhite@schoolcraft.edu>
**Sent:** Monday, January 29, 2018 11:06 AM
**To:** Everyone (Administrative staff only) <EveryoneSC@schoolcraft.edu>; Faculty - Everyone <Faculty-Everyone@schoolcraft.edu>
**Subject:** 2017 W-2's Available on Web Advisor
**Importance:** High

Good Morning,

The 2017 W-2 forms are now available to view on Web Advisor.

Those who have not chosen the consent option to view their W-2's online will have their W-2 form mailed out by Wednesday, January 31, 2017.

**Please notify your student employees of this information.**

Sincerely,

**Ann White,** MBA *Accounting Services Manager*
Disbursements | 734-462-4571


**Schoolcraft**
**College**

18600 Haggerty Rd., Livonia, MI 48152-2696
www.schoolcraft.edu

1

EXHIBIT "M"

Social Security Online  **Electronic Wage Reporting (EWR)**
www.socialsecurity.gov  EWR Menu  |  E-mail a Wage Reporting Expert  |  Keyboard Navigation  |  Logout

## Submission Status

| 1 Search Results | 2 Submission | 3 Report | 4 Errors | 5 Error Details |
|---|---|---|---|---|
| Submitter EIN: 23-1685740<br>Receipt Year: 2018 | WFID: 5XX577<br>Version: 04<br>Submitted: 08/01/2018<br>Submission Type: W-2<br>Total Reports: 1 | | | |

New Search

---

### Submission Details

**Overview**
File Name: 2017W2REPORT.zip
Submission Method: INTERNET
Submission Type: W-2

**Reports**
Total Reports    1  View All Reports
Completed Reports 1  View Completed Reports

**Current Status**
Submission Status: COMPLETE
Status Date: 08/01/2018

[Back to Search Results]  [Print Page]

Have a question? Call 1-800-772-6270 Mon. – Fri. 7AM to 7PM Eastern Time to speak with Employer Customer Service personnel. For TDD/TTY call 1-800-325-0778.

EXHIBIT "N"

AFFIDAVIT

I, HENRY M. NIRENBERG, hereinafter at times referred to as Affiant, being first duly sworn, make the following oath:

1. I am an attorney duly licensed in the State of Michigan.

2. I am a partner at the law firm of Seyburn Kahn, PC, (the "Firm"), which firm serves as general counsel for Schoolcraft Community College District, with main campus in the City of Livonia, State of Michigan (the "Taxpayer").

3. At all times relevant, David C. May was a former partner with the Firm.

4. David C. May subsequently retired from the Firm and is currently acting as of counsel.

5. Form 2848 was filed on November 23, 2016, naming David C. May and myself as Representatives on behalf of Taxpayer.

6. The November 23, 2016 Form 2848 did not revoke any prior Powers of Attorney previously filed by the Taxpayer.

7. Notwithstanding a Form 2848 having been filed and of record at the Internal Revenue Service (the "IRS"), at no time did Affiant receive any: (i) notice; (ii) correspondence; (iii) fax; (iv) email; or (v) telephone call from the IRS regarding any tax matters or tax years referenced in the Notice of Federal Tax Lien dated March 15, 2021 (the "Lien") and signed by Revenue Officer, Toniessia Williams.

8. David C. May advised me that he did not receive any notices or correspondence from the IRS relevant to this matter.

9. No one else at my Firm received any notice or correspondence from the IRS relevant to this matter.

10. At no time did Affiant receive a Notice of Intent to Levy regarding the matters or years set forth in the Lien.

11. At no time did David C. May nor anyone else at my Firm receive a Notice of Intent to Levy.

{01684564.DOCX;2}

12. At no time prior to the filing of a lien or the commencement of seizing assets of the Taxpayer was Affiant provided notice of any kind whatsoever from the IRS regarding the Taxpayer or any alleged deficiencies in the Taxpayers compliance with applicable tax regulations as set forth in the Lien.

I affirm and declare under penalty of perjury that the facts I state in this Affidavit are true, correct and complete to the best of my ability, belief and knowledge.

FURTHER AFFIANT SAYTH NOT.

HENRY M. NIRENBERG

STATE OF MICHIGAN )
)§§
COUNTY OF OAKLAND )

On this _____ day of August, 2021, before me personally appeared HENRY M. NIRENBERG to me known to be the person described in and who executed the forgoing instrument and acknowledged that he executed the same as his free act and deed.

_____, Notary Public
_____ County, Michigan
Acting in Oakland County, Michigan
My Commission Expires: _____

CHERYL KASSAH
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES 04/10/2020
ACTING IN COUNTY OF OAKLAND

{01684554.DOCX;2 }

EXHIBIT "O"

 **Internal Revenue Service**
United States Department of the Treasury

```
This Product Contains Sensitive Taxpayer Data
```

# Account Transcript

|  |  |
|---|---|
| Request Date: | 08-10-2022 |
| Response Date: | 08-10-2022 |
| Tracking Number: | 102442307751 |

FORM NUMBER:     CIVIL PENALTY

TAX PERIOD:      Dec. 31, 2017


TAXPAYER IDENTIFICATION NUMBER: XX-XXX5740


SCHO COMM COLL DIS

18600

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---


ACCOUNT BALANCE:              $0.00

ACCRUED INTEREST:             $0.00 AS OF: Aug. 22, 2022

ACCRUED PENALTY:              $0.00 AS OF:


ACCOUNT BALANCE PLUS ACCRUALS
(THIS IS NOT A PAYOFF AMOUNT):    $0.00


        ** INFORMATION FROM THE RETURN OR AS ADJUSTED **

TAX PER TAXPAYER:              0.00


```
                            TRANSACTIONS
```

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 240 | Miscellaneous penalty | 201947 | 12-09-2019 | $219,900.00 |
|  | 12-09-2029 |  |  |  |
| n/a | 28354-722-52310-9 |  |  |  |
| 971 | Tax period blocked from automated levy program |  | 02-03-2020 | $0.00 |

| | | | |
|---|---|---|---|
| 971 | Collection due process Notice of Intent to Levy -- issued | 09-14-2020 | $0.00 |
| 971 | Collection due process Notice of Intent to Levy -- return receipt signed | 10-09-2020 | $0.00 |
| 971 | First Levy Issued on Module | 03-12-2021 | $0.00 |
| 582 | Lien placed on assets due to balance owed | 03-19-2021 | $0.00 |
| 971 | Issued notice of lien filing and right to Collection Due Process hearing | 03-25-2021 | $0.00 |
| 670 | Payment Levy | 07-20-2021 | -$233,375.63 |
| 196 | Interest charged for late payment | 202130 08-16-2021 | $13,475.63 |
| 960 | Appointed representative | 08-11-2021 | $0.00 |
| 583 | Removed lien | 09-03-2021 | $0.00 |

```
This Product Contains Sensitive Taxpayer Data
```

EXHIBIT "P"

Published on *The National Law Review* (http://www.natlawreview.com)

# IRS Collection: Current Enforcement Updates and Trends

Article By:
Eric M. Nemeth

Since the pandemic began in March 2020, IRS Collection has taken efforts to assist taxpayers facing financial challenges, including holding off on taking enforcement action against many taxpayers. However, the gloves come off on June 15, 2021. Beginning June 15, the IRS will begin issuing Final Notices of Intent to Levy. Enforcement action, including levies on wages and bank accounts, will begin 45 days after issuance for taxpayers that have not resolved their accounts. In addition, you can expect federal tax liens to be filed in cases that meet certain criteria. Resolving your tax debt early in the process can help alleviate the burdens caused by these actions.

But that is not all that IRS Collection is doing. According to Darren Guillot, IRS Small Business/Self-Employed Deputy Commissioner for Collection, the IRS is continuing its collaboration with the IRS Office of Fraud Enforcement which stood up in March 2020. With this collaboration, the IRS has been able to effectively and efficiently refer cases to the IRS Criminal Investigation Division. Case referrals are taking half the time they did in the past, which has resulted in more cases being referred than before. In addition, historically, most of the referrals to Criminal Investigation from IRS Collection have been employment tax cases. However, IRS Collection is now referring high-income non-filing cases as well.

The IRS is responsible for collecting almost 95 percent of total federal revenue through its compliance and collection activities. Current enforcement activities and programs at the IRS include the following:

- **HiDeF/Operation Surround Sound**. These enforcement efforts are geared towards high-income non-filers. Taxpayers that fall within this program have an income of $100,000 or more and have not filed federal income tax returns.

- **Operation Liquidation**. This effort involves the IRS Insolvency Unit. Insolvency is looking into taxpayers that file bankruptcy and matching taxpayer disclosures to FATCA information and other information obtained through data analytics.

- **Ghost Employer Project.** A Ghost Employer is one who issues Forms W-2 to its employees, but who has not filed those forms with the Social Security Administration and has not filed employment tax returns, Form 941 and Form 940, with the IRS. Both the IRS Examination Division and IRS Collection are working these cases and making criminal referrals in these cases.

- **Repatriation Suits.** IRS Collection is using FATCA and data analytics to locate foreign assets held by taxpayers. Once located, they are working with IRS Chief Counsel and the Department of Justice to pursue mutual collection assistance requests with U.S. Treaty Partners.

- **Cryptocurrency Projects.** The message is clear from Darren Guillot. "The IRS knows if you have virtual currency…. Taxpayers need to tell the truth [about their virtual currency]." More information about IRS cryptocurrency enforcement efforts can be found here.

If you fall within any of the IRS's current enforcement priorities, or if you have unpaid taxes or unfiled returns, you need an experienced tax attorney to represent you in your dealings with the IRS or the Department of

Justice.

© 2023 Varnum LLP

National Law Review, Volume XI, Number 162
Source URL: https://www.natlawreview.com/article/irs-collection-current-enforcement-updates-and-trends

EXHIBIT "Q"

17505

**Form 668 (Y)(c)**
(Rev. February 2004)

2021 MAR 24   AM 10: 57

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #2 Lien Unit Phone: (800) 913-6050 | Serial Number 427089721 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer SCHOOLCRAFT COMMUNITY COLLEGE DIST
a Corporation

Residence    18600 HAGGERTY RD
             LIVONIA, MI 48152-3932

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 6721 | 12/31/2016 | XX-XXX5740 | 10/21/2019 | 11/20/2029 | 123.25 |
| 6721 | 12/31/2017 | XX-XXX5740 | 12/09/2019 | 01/08/2030 | 219900.00 |
| 720 | 06/30/2020 | XX-XXX5740 | 10/05/2020 | 11/04/2030 | 53.81 |
| 941 | 12/31/2018 | XX-XXX5740 | 11/11/2019 | 12/11/2029 | 551.25 |
| 941 | 06/30/2019 | XX-XXX5740 | 10/14/2019 | 11/13/2029 | 127046.99 |

Bernard J. Youngblood
Wayne County  Register of Deeds
2021101953    L: 55541 P: 129
03/24/2021 10:57 AM  USL   Total Pages: 1

| Place of Filing | REGISTER OF DEEDS WAYNE COUNTY DETROIT, MI 48226 | Total $ | 347875.30 |
|---|---|---|---|

This notice was prepared and signed at _____ DETROIT, MI _____, on this,

the __15th__ day of __March__, __2021__.

| Signature    for TONIESSIA WILLIAMS | Title REVENUE OFFICER (248) 699-9552 | 22-04-4617 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

EXHIBIT "R"

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST                    TIN:

a return pc.  PC/VMM ended.

I returned the third party's pc.  I requested a return pc and provided my office phone number for
contact.  PC/VMM ended.

The third party returned my pc shortly after my call to her.  She explained that she received the
notice of levy for the bmf account and wanted to know if it was still valid.  I asked the third party
for the date that she received the levy.  The third party stated 06/15/2021.  I asked the third party
if she owed any funds to the tp on the date that the levy was received.  The third party responded
no.  I explained that the levy issued was a one-time levy, and I told the third party that she should
complete the back of Part 3 stating "No Funds", provide any other information to her knowledge on
the form and return it to my attention at the IRS address noted on the front of the levy.  The third
party responded okay.  PC ended.

---

ACTION DATE: 07/07/2021   SYSTEM DATE: 07/07/2021   CONTACT: PHONE   CREATE ID: 22044617

TP/POA CONTACT
FULL COMPLIANCE CK
GENERAL HISTORY

TP/POA CONTACT - I received a fax and a pc/vmm from the tp's POA.  The fax contained a letter, Form
2848 and a copy of the Notice of Federal Tax Lien.  The POA requested a return pc and provided the
following phone number for contact- 248-353-7620.  PC/VMM ended.

I returned the POA's pc and left a vmm requesting a return pc.  I provided my office phone number
for contact.  PC/VMM ended.  After a few minutes, I received a return pc from POA- Mr. Scott Wallace.
The POA stated that he had been contacted by the tp after the lien was filed and after some funds
were seized.  The POA stated that he had spoken with Mr. Cerny, and he identified him as the "President
of the college now".  The POA stated that he was told that the tp had not received any notices, nor
had they been contacted regarding the balances owed.  I told the POA that I made a fc to the business
in 09/2019.  I explained that I spoke with Mr. Jon Lamb, Mr. Glenn Cerny and Ms. Susan Sathur and
provided them with a Form 9297.  I told the POA that the tp appeared to be cooperative when they
responded to the Form 9297.  But I attempted to contact them to get one of the forms corrected and
there was no response.  I explained that a credit transfer was possibly needed on one of the returns
but the tp failed to respond.

I also informed the POA that there was no contact on the case during the the initial onset of the
pandemic.  I told the POA that I attempted to contact the tp is June 2020 but there was no response.
I also provided the dates for when I issued the L1058, L1085 relative to the unfiled returns etc.
I told the POA that the L1058 was delivered certified mail and was accepted per the postmaster.  The
POA responded okay.

The POA asked about the balances owed on tax modules- 01/201906 and 13/201712.  I informed the POA
that the balances on the respective modules were penalties assessed due to late or missing returns.
The POA responded okay and stated that he was going to call his client and provide them with the
update.  I responded okay and asked the POA if he had any other questions.  The POA responded no.
PC ended.

# EXHIBIT "S"



## Year-End Check List

| 4th Quarter | 2022 Year End | Prep for 2023 | Action Items | Due Date | Completed |
|---|---|---|---|---|---|
| Oct-Dec | | ★ | Order or download federal and state tax reporting forms | 11/30 | 11/30 |
| | ★ | ★ | Maintain Year To Date spreadsheet | 12/23 | Ongoing |
| | ★ | | Process final payrolls | 12/20 | |
| | ★ | | Review status of prior year's task list | 12/31 | |
| | ★ | | Download Regulatory Reporting manual from Ellucian | 12/31 | |
| | ★ | | Get benefit amounts from Amy and update via batch | Before First Payroll 24 | |
| | | ★ | Verify if minimum wage is changing for the coming year | Before First Payroll 24 | |
| | | ★ | Prepare payroll calendar for 2024 | 8/23 | 8/23 |
| | | ★ | Identify processing dates for first payroll(s) of 2024 | 8/23 | 8/23 |
| | ★ | | Review holiday and payroll processing schedule between October and March | 10/23 | 10/23 |
| | ★ | | Establish year-end payroll adjustment schedule | 12/23 | |
| | ★ | | Obtain IRS Publication 5165, Guide for Electronically Filing Affordable Care Act (ACA) Information Returns (AIR) for Software Developers and Transmitters | 12/23 | |
| | ★ | | Complete ACA Application for Transmitter Control Code – required to file Forms 1095-C electronically with the IRS | n/a | |
| | ★ | | Create and print W-2 audit report at end of the 3rd quarter | 12/31 | |
| | ★ | | Review with programmers the year-end programmer's checklist | 12/31 | |
| | | | | | |
| Nov | ★ | | Preliminary printing of Forms W-2 and 1095-C on plain paper | 31-Dec | |
| | ★ | | Order pressure seal tax forms, if needed. W2, 1095C, 1099 NEC, 1099 MISC | 30-Nov | 11/30 |
| | ★ | | Electronic consent email | 31-Dec | |
| | ★ | | Meet with IT to confirm year-end and 2024 processing schedule | 31-Dec | |
| | | | | | |
| Dec | ★ | | Schedule year-end tax deposits and determine estimated deposits | 31-Dec | |
| | ★ | | Obtain from Accounts Payable information on payments made to employees | 31-Dec | |
| | ★ | | Impute income from payments provided by Accounts Payable | Dec-Jan | |
| | ★ | | Distribute Information Memo to employees | Dec-Jan | |
| | ★ | | Prepare state and local reconciliation due date chart | Dec-Jan | |
| | | ★ | Work with IT to validate tax updates prior to 1st payroll of new year | Dec-Jan | |
| | ★ | | Review and input fringe benefit income to ensure proper reporting on tax returns | Dec-Jan | |
| | | ★ | Complete testing of new benefits and other changes for 1st payroll of 2024 | Jan | |
| | ★ | | Complete testing of year-end system updates | Dec-Jan | |



**Year-End Check List**

| | ★ | | Complete testing of Forms 1095-C | Dec-Jan | |
|---|---|---|---|---|---|
| | | | | | |



# Year-End Check List

| 1st Quarter | 2023 Year End | Prep for 2024 | Action Items | Due Date | Completed |
|---|---|---|---|---|---|
| **Jan** | ★ | | Close prior year 4th quarter (see Payroll Quarterly Backup & Close Procedure) | Before first payroll | |
| | ★ | | Confirm that the 2023 accumulators have been reset for 2024 | Before first payroll | |
| | ★ | | Update tax tables (TAXC) in Colleague | Before first payroll | |
| | ★ | | Update benefit costs (BCIS) in Colleague | Before first payroll | |
| | ★ | | Ensure any new benefit codes are added to W2 boxes (BTXF) | Before first payroll | |
| | ★ | | Run CEML for 403b, Hsa, flex, dependent care, etc. | Before first payroll | |
| | ★ | | Notify mailroom of scheduled distribution date of Forms W-2 and 1095-C | 1/10 | |
| | ★ | | Finalize general ledger reconciliation prior to 941 and W-2 filing | 1/20 | |
| | ★ | | Generate W2 file. Refer to U.S. Regulatory Reporting Manual in Year-End folder (see W2 File tab) | 1/20 | |
| | ★ | | Produce electronic EFW2 file for SSA | 1/20 | |
| | ★ | | Test EFW2 file with AccuWage Online to ensure format and other items are correct before submitting the file to SSA. If needed, correct the file and use AccuWage Online again to test the file. | 1/20 | |
| | ★ | | Submit EFW2 file to SSA | 1/31 | |
| | ★ | | File paper Forms W-2/W-3 with SSA | 1/31 | |
| | ★ | | Send employee notice of availability of electronic Forms W-2 and 1095-C | 1/31 | |
| | ★ | | Distribute Information Memo to employees | 1/31 | |
| | ★ | | Send employees state/city specific notifications for federal/state Earned Income Credit | 1/31 | |
| | ★ | | Furnish Forms W-2 and 1095-C to employees | 1/31 | |
| | ★ | | Provide reconciliation example of last paycheck to Form W-2 | 1/31 | |
| | ★ | | Provide employees with explanation of the use of Form 1095-C | 1/31 | |
| | ★ | | Provide instructions for duplicate W-2 and 1095-C requests and fees | 1/31 | |
| | ★ | | File state income tax reconciliation returns | 1/31 to 3/2 | |
| | | ★ | Notify employees of new year social security wage base and tax rate | 1/1 | |
| | | ★ | Manually verify random checks of 1st payroll of 2024, tax withholding and new benefit deductions. APA Tip: Check the FITW for the highest income employee claiming single, head of household, and married to ensure FITW calculation is correct. | First Payroll | |
| | | ★ | Validate wage bases and tax percentages for federal and state taxes | First Payroll | |



**Year-End Check List**

|  |  | ★ | Validate updates to company benefits package | First Payroll |  |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
| **Feb** | ★ |  | Produce electronic file for IRS with Forms 1095-C | 28-Feb |  |
|  | ★ |  | Prepare information for Form 1094-C transmittal | 28-Feb |  |
|  | ★ |  | File paper Forms 1094-C/1095-C with IRS | 2/28 |  |
|  |  |  |  |  |  |
| **Mar** |  | ★ | Update state unemployment wage bases and tax rates | n/a |  |
|  |  | ★ | Prepare accrual adjustments for state unemployment insurance tax for states from which you did not receive tax rates before the first payroll of the year | n/a |  |
|  | ★ |  | Submit electronic file with Forms 1095-C to IRS. NOTE: Files larger than 100MB must be split to ensure files are less than 100MB. | 3/31 |  |
|  | ★ |  | Schedule debriefing meeting | 3/31 |  |
|  | ★ |  | Document lessons learned | 3/31 |  |
|  | ★ |  | Reward your staff. Celebrate! | 3/31 |  |
|  |  |  |  |  |  |

U.S. Regulatory Reporting Manual

Go to "Steps at a Glance" (page 222) OR
Close the quarter following steps outlined in
Payroll Quarterly Backup & Close Procedure
Check steps as you go:
QYPR
QYPI
  QFTR & YCYS should be "No"
Use address for CHCK
Run W2PP pg 240 in USRR Manual
W2AJ for adjustments
W2BA for taxable benefit changes

After the last payroll is completed for the year, in production, and no more adjustments are needed, run W2PP.

Steps:

1. W2PP
2. W2AJ (if adjustments are needed)
   a. Use the W2-ADJ Template, VREG, and TW2 Data Validation report to determine adjustments needed on W2AJ
      i. Filter on VREG for the following object codes:
         - 2950
         - 2973
         - 2974
         - 2977
      ii. Filter out non-tuition related items
      iii. Copy/paste filtered information to the template
      iv. Run TW2 Validation report for the employees that have taxable tuition
      v. Copy/paste TW2 Validation report to the template
   b. On W2AJ, correct the FED, FICA, and FICM taxable, and the FICA & FICM tax withheld.
   c. Add another line for TURB/Tuition Reimbursement (W22) and enter the taxable amount of the reimbursement
   **NOTE***DO NOT RUN W2PP AGAIN AFTER MAKING ADJUSTMENTS ON W2AJ. THIS WILL RESET THE W2 DATA TO THE ORIGINAL DATA AND W2AJ ADJUSTMENTS WILL BE LOST. RUN W2VR FOR A COMPREHENSIVE REPORT AFTER ADJUSTMENTS.
3. W2VR
4. W2FP (print file)
5. W2SP (Self-service availability)
6. W2EX (SSA file)
   - Once the W-2's have been mailed, it is a good idea to wait for a period of time so that any corrections that may come to light can be made before finalizing the year end processes.
   - W2EX process will create the export. The PIN assigned by the SSA is entered here as well as the contact information.
   - The Total Federal Income Tax Withheld by Third Party is for Third Party Sick Pay, The FICA class is almost always "R" for "Regular(All Others) and a .00 should be entered if there was no Third Party Sick Pay tax withheld.
   - The Batch Control ID can be a number of your choice, i.e. 2015-01.
   - An export file will only be created when Update Mode is "Yes".
7. Create EFW2 file for SSA
   - When you detail in on the Modify Target File Definition in W2EX, you will have the opportunity to choose a secure directory of your choice to receive the EFW2 export file such as DATA/DATA_P/PAYROLL.EXPORTS.
   - The file name should be unique each time you run the process as in W2_2015_01, etc.
   - Once the form is complete and the process is run, an export file will be created and a 6559 Summary Report will be created.
   - If you only want a report, you can choose "N" for update mode.
   - The file that is created is defined according to the EFW2 Specifications as outlined in the link shown earlier for the Social Security Administration
8. For more detailed information, read Ellucian's PP, found in the Payroll>Year End Calendar folder or on the Ellucian Forum:
   https://elluciansupport.service-now.com/$viewer.do?sysparm_stack=no&sysparm_sys_id=302a4ca487af81d0e01ccb35dabb3565
9. YCYS
10. QCBB

# EXHIBIT "T"



**< Watchblog: Following the Federal Dollar**

# How the Pandemic is Changing the IRS

Posted on November 02, 2021

   

At the onset of the pandemic, IRS had to temporarily shut down its onsite operations, including its mail processing facilities. The impact could be felt by taxpayers, who waited longer for returns to be processed or to receive COVID-related economic relief checks. But the pandemic also disrupted IRS's tax enforcement programs used to check that information provided by taxpayers is verified, and that the correct amount of tax is paid to the federal government.

Today's WatchBlog post looks at our new work on how IRS was impacted by COVID-19 in 2020 and 2021, as well as the long-term changes the pandemic may have on its operations.



**What happened to enforcement when IRS shut down in March of 2020?**

To help protect the health and safety of IRS employees and the public, between March and July 2020, all in-person enforcement activities were halted, but so were mail-based activities because IRS mail processing centers were closed. Like many businesses at the start of the pandemic, IRS employees, who had begun teleworking, initially had limited ability to perform their tasks remotely. Some IRS employees—for example examiners from IRS's Wage & Investment division—had not previously been allowed to telework. To adapt, IRS created a number of new procedures to enable a virtual workforce. IRS used technology, including video conferencing, to allow IRS staff to safely interact with taxpayers. For some audits, IRS staff met with taxpayers outdoors. E-fax technology and scanned documents also allowed taxpayers to send IRS documents, bypassing IRS's closed facilities.

**What about after IRS enforcement programs resumed?**

Interruptions to mail, phone, and print operations continued to cause delays and backlogs in IRS's enforcement caseloads even after operations resumed. Examiners experienced significant work backlogs along with new process challenges and reduced staff availability.

In July 2020, IRS decided to freeze sending new enforcement related notices to taxpayers so that it could catch up on processing older notices. As a result, some IRS notices were delayed until November 2020, and resulting casework pushed into 2021.

Enforcement caseloads increased from June 2020 to June 2021, but not all activities have returned to their prepandemic levels.

This year, IRS has been piloting an online text chat service allowing taxpayers to authenticate their identities, send documents, and settle specific account issues.

### What has IRS learned from its pandemic operations?

Many enforcement activities across IRS were not telework ready because they largely relied on paper processes. IRS managers told us that IRS recognizes it needs to move from paper-based to more digital processes. Some of the new technologies and strategies that IRS used to manage enforcement activities during the pandemic may stick around.

IRS managers also told us that expanding self-help options for taxpayers has been a successful change to operations. Responding to challenges posed by the pandemic has demonstrated that virtual communication and digital processes can help in times of crisis, and IRS is currently assessing lessons learned for potential permanent improvements.

Our work about COVID-19's impacts on IRS enforcement was part of our eighth comprehensive report on the federal response to the pandemic. To find out more, check out our full report.

---

- Comments on GAO's WatchBlog? Contact blog@gao.gov.

# Topics

Government Operations    Internal Revenue Service    Coronavirus    Pandemic

Federal tax system    Taxpayer services    Tax returns    Strategic Issues

# GAO Contacts



## James (Jay) R. McTigue, Jr

Director

✉ mctiguej@gao.gov

📞 (202) 512-6806

# You might also like



### American Credit Card Debt Hits a New Record—What's Changed Post-Pandemic?

**OCTOBER 31, 2023**

It's Halloween! And while you may be thinking of goblins and ghosts, nothing can haunt you the way ...



### In the Next Pandemic Antiviral Drugs Could Be Key, But Are They Ready?

**OCTOBER 04, 2023**

Scientists say another pandemic is likely and have even identified several viruses that could be a ...





## Protecting Emergency Assistance Funding from Payment Errors, Including Fraud

JULY 13, 2023

Federal emergency assistance is a critical resource for helping communities, businesses, and ...

## What About the Next Pandemic? How Can the Federal Government Better Prevent and Plan For the Next Public Health Emergency?

JULY 11, 2023

We have made about 400 recommendations to improve the government's response for future public health ...



## Receive GAO Updates

Stay informed as we add new reports & testimonies.

Enter Your Email Address

SUBSCRIBE

**GAO**

U.S. Government Accountability Office

Press Center

Contact Us

Inspector General

Restricted Reports

Copyright & Terms of Use

Privacy Policy

Accessibility

Sitemap

FOIA Requests

Scam Alerts

No FEAR Act Data

Health Care Advisory Committees



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, DC 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

July 06, 2020

MEMORANDUM FOR ALL SB/SE COLLECTION EMPLOYEES

FROM:             Darren John Guillot
                  SB/SE Deputy Commissioner, Collection & Operations Support

SUBJECT:          SB/SE Compliance Activities Post People First Initiative

The People First Initiative (PFI) under which IRS granted specific relief to taxpayers and suspended many collection activities as a result of the COVID-19 pandemic, expires July 15, 2020. We will soon share detailed and specific internal operations guidance for our transition from the PFI exceptions to our resumption of program work and priorities.

While we are all anxious to return to "normal" operational status as quickly as possible, employee and public safety are paramount; consequently, our transition will be measured. More specific guidance will be forthcoming, but here are high-level themes:

**Enforcement Activities**
Effective July 16th, enforcement processes may resume on a case-by-case basis, with normal approval levels. Employees must apply good judgment in determining when enforcement action is appropriate, and should use Soft Contact procedures to determine the impact of the national emergency on the taxpayer. The IRM provides employees with the necessary authorities and discretion to appropriately handle unusual situations and hardship issues.

Automated enforcement activities (for example, the Federal Payment Levy Program and ACS systemic levies) will remain idle while backlogs of incoming mail and outgoing notices are resolved. Additional guidance on the operation of specific Collection programs will be forthcoming from Collection leadership in the coming days.

**Field Work**
Working in the field is at the core of what revenue officers do, and the benefits of field work in terms of case outcomes and the impact on overall compliance are too numerous to mention. At some point we will return to field work, but given the national pandemic emergency, that is not currently appropriate. Until further notice, doing work in the field

2

will be the exception and not the rule. Field employees may be permitted to conduct essential face-to-face public contact/field activities on a voluntary basis, only when necessary and appropriate, and with Territory Manager concurrence.

Face-to-face field contact should only be authorized where:

(1) there are no effective alternatives to face-to-face contact, and the failure to act poses a risk permanent loss to the government, such as the expiration of a statute, assets being placed permanently beyond government reach, or the continuing pyramiding of employment tax liabilities; or

(2) the taxpayer or representative has requested face-to-face contact and the RO and manager agree that field contact would advance the progress of the case.

In all instances of public contact, employees are expected to wear masks or other face coverings, practice social distancing, and adhere to CDC guidelines (handwashing, etc.) to guard against possible exposure to or spread of COVID-19. Where possible, consider conducting the meeting with the taxpayer in an IRS facility (such as, Taxpayer Assistant Centers) equipped with plexi-glass barriers.

We recognize the current environment is changing frequently. While we cannot anticipate and provide guidelines for every possible situation, it remains vitally important for all SB/SE employees to be sensitive to their own and the individual circumstances of taxpayers to determine the appropriate tax administrative actions commensurate with our respective situation.

I sincerely appreciate your continued efforts and dedication to assist as we work through the COVID-19 pandemic.



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

Small Business/Self-Employed Division

July 10, 2020

MEMORANDUM FOR ALL FIELD COLLECTION EMPLOYEES

FROM:                    Hank Kea
                         Director, Field Collection,
                         Small Business/Self- Employed Division

SUBJECT:                 Field Collection Interim Guidance for COVID-19
                         Field Work

The COVID-19 pandemic, beginning March 2020, significantly affected Field Collection (FC) employees' ability to conduct face to face investigative and enforcement activities with the public. Throughout the COVID-19 pandemic, Field Collection and IRS have emphasized employee safety as our number-one priority, and that will continue to be the case when the People First Initiative expires on July 15, 2020.

Effective July 16, 2020 and until further notice, Field Collection will continue to maximize telework and remote contact between employees and taxpayers for the vast majority of our cases. Face-to-face public contact/field activities will only occur in exceptional cases, as described below. They will not be routine or regularly occurring activities.

Field Collection employees may be permitted to conduct essential face-to-face public contact/field activities – on a voluntary basis, only when necessary and appropriate, and only with Territory Manager concurrence.

These limited face-to-face public contact/field activities may include making field contacts to view assets, serve summons, take necessary and appropriate investigative and/or enforcement actions, and conduct interviews with taxpayers, their designated representatives, and/or third parties at their homes or business locations (if there are no alternate locations where these activities can be performed), and will only be authorized when:

- There are no effective alternatives to face-to-face contact, and the failure to act poses a risk of permanent loss to the government, such as the expiration of a statute, assets being placed permanently beyond government reach, or the continuing pyramiding of employment tax liabilities:

**<u>or</u>**

2

- The taxpayer or representative has requested face-to-face contact and the RO and manager agree that field contact would advance the progress of the case.

In all instances, we will consider the personal facts and circumstances relative to each individual employee including factors such as risk status and personal safety concerns relative to the proposed face-to-face public contact/field activities. Employees must conduct all face-to-face public contact/field activities with caution and extreme sensitivity to the taxpayer's personal circumstances, and how the taxpayer has been impacted by the COVID-19 pandemic. Employees must apply good judgment in determining when public contact and/or enforcement action is appropriate and should use Soft Contact procedures to determine the impact of the national emergency on the taxpayer. The IRM provides employees with the necessary authorities and discretion to appropriately handle unusual situations and hardship issues.

In all instances of public contact, employees are expected to wear masks or other face coverings, practice social distancing, and adhere to CDC guidelines (handwashing, etc.) to guard against possible exposure to or spread of COVID-19. Where possible, employees should consider conducting the meeting with the taxpayer in an IRS facility (such as, Taxpayer Assistant Centers) equipped with plexi-glass barriers. Regarding the use of Taxpayer Assistance Centers (TAC) to meet with taxpayers, be aware that not all TACs are open and the nature of the continued risks associated with COVID may result in additional closings of TACs that may be open.   Prior to scheduling any meeting with taxpayer at a TAC, you must contact the local TAC manager and ensure it is open and available and schedule a specific date and time for use. In some cases social distancing requirements will dictate that TAC space is not available despite it being open. You are expected to follow TAC procedures, including asking taxpayers to be masked and to not be accompanied by more than one person, as well as cleaning work areas after use.

Field Collection employees and managers should use this document, along with the attached checklist, and other COVID-19 related federal, state, and local guidance on health and safety, travel, restrictions on state/local business resumption status, and most importantly, knowledge as to the appropriateness of face-to-face public contact/field activities given local circumstances, when considering and approving face-to-face public contact/field activities.

Questions and concerns regarding face-to-face field activities should be shared with your manager.

**Field Collection**
**Checklist for COVID-19 Field Work**

Employees, Group Managers, and Territory Managers should consider the list below prior to proposing or approving field contact, to ensure all necessary precautions are taken for employee and public safety.

- Priority of the Field Work
  - Exigent circumstances (i.e., jeopardy, statute issues)
  - Risk of permanent loss to the government
  - Placement of assets beyond the reach of the government
  - Continuing pyramiding of employment tax liabilities
  - Taxpayer and/or Power of Attorney requests revenue officer face-to-face contact and RO and manager agree that field contact would advance the progress of the case

- Location of the Field Work
  - Are state/local orders/restrictions currently in place?
  - Must the contact take place in the taxpayer or representative's business or residence? Avoid contact inside personal residence, if at all possible. Can the contact be conducted inside or outside or at an IRS facility (Taxpayer Assistance Center) with plexi-glass barriers?
    a. Prior to scheduling any meeting with taxpayer at a TAC, you must contact the local TAC manager and ensure it is open and available and schedule a specific date and time for use.
    b. In some cases social distancing requirements will dictate that TAC space is not available despite it being open.
    c. You are expected to follow TAC procedures, including asking taxpayers to be masked and to not be accompanied by more than one person, as well as cleaning work areas after use.

- All Employees Requesting Field Work Will Confirm:
  - No cough, fever, trouble breathing or other COVID-19 symptoms
  - No close contact with positive COVID-19 individuals with above symptoms
  - No regular contact with/responsibility for individuals high risk category, or with chronic illnesses
  - **Note:** If an employee doesn't feel well, do not conduct face to face contact

- Mitigating Potential Exposure
  - Review current CDC Guidelines
  - Utilize PPE (face mask, hand sanitizer)
  - Social Distancing (consider conducting interview in open setting, i.e. outside)
  - ROs travel alone in their POVs

**Field Collection**
**Checklist for COVID-19 Field Work**

- Immediately upon Field Contact
  - Approach each contact with caution and extreme sensitivity to the taxpayer's personal circumstances
  - Assess the risk of situation (e.g., physical layout of the contact location, ability to social distance, etc.)
  - Assess the impact of the situation on the taxpayer
  - Consider taxpayer stress and fatigue, even where taxpayers have not experienced any personal illness or monetary loss from the pandemic

- Post Field Activity Reminders
  - Sanitize or wash hands; avoid touching face
  - Report any potential COVID-19 symptoms ASAP

Share concerns or unusual circumstances related to the field activity with your manager



**United States Government Accountability Office**

**Report to Congressional Committees**

October 2021

# COVID-19

## Additional Actions Needed to Improve Accountability and Program Effectiveness of Federal Response



# COVID–19 Impact on IRS Enforcement

In response to the pandemic's onset in March 2020, the Internal Revenue Service significantly reduced its efforts to enforce taxpayer compliance. In July 2020, IRS started increasing these enforcement efforts by making changes to address the challenges of operating in a pandemic environment.

**Entity involved:** Internal Revenue Service, within the Department of the Treasury.

## Background

The Internal Revenue Service's (IRS) tax enforcement efforts help collect tax revenue from noncompliant taxpayers and promote voluntary tax compliance. We have included enforcement of tax laws on our High-Risk List due to the need for IRS to improve tax compliance and address the gross tax gap, or the difference between taxes owed by individuals and businesses and the taxes they paid voluntarily and on time.[613]

IRS's efforts to enforce tax compliance include examination programs to help ensure that taxpayers file accurate tax returns. IRS's Wage and Investment (W&I), Small Business and Self-Employed (SB/SE), and Large Business and International (LB&I) divisions conduct examinations based on the type of taxpayer. Examinations can be conducted by mail and telephone or in person, such as at an IRS office or a taxpayer's location. IRS also uses automated compliance checks, such as the Automated Underreporter (AUR) program, to verify taxpayer compliance by comparing information reported by taxpayers to information reported to IRS by third parties, such as employers and banks. IRS collection efforts seek to enforce taxpayers' compliance with tax filing requirements and payment of taxes.[614]

## Overview of Key Issues

Beginning in March 2020, IRS closed its on-site operations and generally suspended its key tax enforcement programs to protect staff and taxpayers from transmitting COVID-19 and because it had limited ability to perform work remotely. In addition, IRS provided tax compliance relief to taxpayers experiencing COVID-19 hardships. This relief included postponing certain collection activities and limiting examinations in the field.

IRS began to resume some enforcement activities in July 2020 by transitioning staff to telework, revising the types of work they were to do, and increasing the use of technology. However, IRS faced significant work backlogs along with process challenges and reduced staff availability. IRS continued to slowly resume enforcement activities in the fall and winter of 2020. As of June 2021, IRS had made major improvements but had not achieved prepandemic levels in caseload and tax revenue for all enforcement activities. IRS is considering ways to identify lessons learned and make

---

[613]Every 2 years, we report on federal programs and operations that are vulnerable to waste, fraud, abuse, and mismanagement, or that need broad reform—our High-Risk List. For more information, see our March 2021 report. IRS enforcement reduces the gross tax gap by collecting unpaid tax revenue, resulting in a "net" tax gap. In 2019, IRS estimated that the average annual net tax gap was $381 billion for tax years 2011–2013.

[614]SB/SE Collection administers these programs for taxpayers served by all divisions.

permanent changes as appropriate to improve enforcement and prepare for future disruptions to operations.

**Use of Weather and Safety Leave over time.** At the beginning of the pandemic, few IRS staff were working in the office, while many others began teleworking. Under IRS policy, staff who were unable to work in either of these settings were placed in Weather and Safety Leave, a type of paid leave typically used when it is unsafe for staff to come into the office due to inclement weather or some other reason (see figure).



**Internal Revenue Service (IRS) Staff Work Status, Mar. 2020–June 2021**

Source: GAO analysis of Internal Revenue Service data. | GAO-22-105051

Note: The major declines for teleworking and time in the office generally occurred during holiday periods for which federal staff generally also use accumulated annual leave

As of June 2021, almost no staff were on full-week Weather and Safety Leave, while more than 60,000 IRS staff performed at least some of their work remotely and approximately 30,000 performed at least some work from the office.[615]

**The pandemic's effects on enforcement caseloads and revenue.** We found that nearly all IRS enforcement caseloads dropped substantially from June 2019 to June 2020. Caseloads increased from June 2020 to June 2021, but not all activities have returned to their prepandemic levels (see table). Although not all changes can be attributed to the pandemic, it was a key factor during the period.

---

[615]We were not able to analyze the amount of time that IRS staff charged to enforcement activities as comparable work time measures are not kept across the various divisions and activities.

**Enforcement Caseload Trends for IRS Examination, Automated Underreporter, and Collection Activities for June 2019, 2020, and 2021**

| Activity/caseload measures | June 2019 | June 2020 | June 2021 | FY 2019–21 % Change |
|---|---|---|---|---|
| **SB/SE—Field Examination**[a] | | | | |
| Starts | 96,870 | 90,301 | 75,379 | -22.19 |
| Closures | 108,379 | 67,369 | 85,736 | -20.89 |
| **SB/SE—Correspondence Examination**[a] | | | | |
| Starts | 164,661 | 143,068 | 99,284 | -39.70 |
| Closures | 156,242 | 125,404 | 184,867 | 18.32 |
| **SB/SE—AUR**[a] | | | | |
| Starts | 1,420,125 | 1,302,067 | 1,829,166 | 28.80 |
| Closures | 1,361,778 | 829,538 | 1,673,051 | 22.86 |
| **W&I—Correspondence Examination**[a] | | | | |
| Starts | 217,242 | 209,964 | 262,014 | 20.61 |
| Closures | 236,027 | 180,895 | 277,971 | 17.77 |
| **LB&I—Examination**[a] | | | | |
| Starts | 13,727 | 17,147 | 17,477 | 27.32 |
| Closures | 16,819 | 12,853 | 14,376 | -14.53 |
| **SB/SE—Collection Inventory**[b] | | | | |
| Unpaid taxes—automated collection | 6,097,332 | 5,742,953 | 6,191,968 | 1.55 |
| Unpaid taxes—field collection | 699,708 | 534,807 | 514,221 | -26.51 |
| Unfiled returns—automated collection | 1,317,229 | 2,222,384 | 1,313,936 | -0.25 |
| Unfiled returns—field collection | 49,709 | 86,113 | 46,836 | -5.78 |

Legend: AUR = Automated Underreporter; FY = fiscal year; LB&I = Large Business and International; SB/SE = Small Business and Self-Employed; W&I = Wage and Investment

Source: GAO analysis of Internal Revenue Service (IRS) data. | GAO-22-105051

[a]Examination and AUR caseloads are tracked by the number of cases started and cases closed.

[b]Collection inventory is measured by the number of taxpayer modules being pursued for unpaid taxes or unfiled returns. A module is a record for a specific taxpayer covering one return for one tax period.

The table shows that the pandemic's effect on caseload varied by the type of enforcement activity. By June 2021, caseloads for AUR and W&I correspondence examinations, which are highly automated, had recovered from the 2020 decline and exceeded the 2019 levels. In LB&I, field examiners generally were ready to telework, which enabled them to start even more examinations, but closures declined because they rely on other parts of IRS that were shut down or at reduced staffing.

By June 2021, workloads in collection for both unpaid taxes and unfiled returns had mostly returned to or were trending toward the 2019 levels. One exception is field collection, where the June 2021 unpaid tax inventory was below the June 2019 and June 2020 levels. SB/SE collection officials said that collecting unpaid taxes in the field generally involves face-to-face contact with taxpayers, unlike the other two activities, which involve collecting unpaid taxes by mail and telephone.

The pandemic also affected the revenue collected through enforcement actions.[616] The table below shows that enforcement revenue declined across all the major enforcement activities during the height of the pandemic in June 2020, although the decline was smaller for collection from unfiled tax returns. Collection officials explained that they shifted staff to work more unfiled tax return cases and fewer unpaid tax cases in the early part of the pandemic because that work could be done remotely without face-to-face contact. Collection officials said they shifted staff back to more unpaid tax cases as safety procedures were implemented.

---

[616]Other factors beyond the pandemic may affect these revenue collection trends. For example, time lags of months if not years exist between completing examinations and collecting the related revenue.

**Enforcement Revenue in June 2019, 2020, and 2021 for Selected Major Enforcement Activities**

| Enforcement activities | Amount—June 2019 ($) | Amount—June 2020 ($) | Amount—June 2021 ($) |
|---|---|---|---|
| All enforcement activities | 41,657,106,427 | 35,760,140,668 | 47,362,241,265 |
| **Selected major activities** | | | |
| Field examination[a] | 2,836,883,338 | 2,345,763,320 | 3,241,727,554 |
| Campus examination[b] | 1,059,321,674 | 861,381,325 | 1,022,024,404 |
| Automated underreporter[c] | 3,370,695,783 | 2,873,110,884 | 3,662,829,596 |
| Collection—taxes owed | 29,585,743,434 | 24,949,583,505 | 33,525,724,252 |
| Collection—unfiled returns | 2,572,959,696 | 2,381,635,066 | 2,980,318,305 |

Source: GAO analysis of Internal Revenue Service (IRS) data. | GAO-22-105051

[a]Involves examinations done by IRS revenue agents in IRS field offices.

[b]Involves examinations done by IRS examiners through mail from IRS campus locations.

[c]Involves matching information returns filed by third parties to report income such as wages to tax returns filed by taxpayers.

**Operational challenges and IRS's actions.** According to IRS management, enforcement activities across IRS generally were not telework ready because the case work largely relied on paper processes.[617] Office closures limited access to physical case files; when staff were able to come to the office, IRS faced logistical challenges of keeping staff socially distanced. Staff did not have computers, scanners, and printers to telework from home, and it took IRS time to procure and distribute this equipment. Enforcement staff were limited in their ability to safely meet taxpayers face to face. Meanwhile, interruptions to mail, phone, and print operations caused delays and backlogs in casework. The table below shows these common operational challenges and the actions IRS took across its divisions.

---

[617]As discussed later, LB&I examination and SB/SE field collection staff were telework ready, according to IRS officials.

**IRS Pandemic-Related Enforcement Challenges and Actions through June 2021**

| Challenges | Actions[a] |
|---|---|
| Becoming telework ready:<br>• Case work largely relied on paper processes | Provided telework training and equipment/technology |
| • Office closures limited access to physical case files | Revised guidance to clarify how staff could work out of the office |
| • Very few processes allowed work to be done virtually/out of the office | Assessed caseload to prioritize and assign work that could be done remotely |
| • Agency lacked telework equipment (computers, document scanning, etc.) | Brought in clerical staff to digitize case files |
| Identifying work for staff whose duties were interrupted by the suspension of enforcement activities | Solicited feedback from staff about their concerns with resuming activities |
| Completing work despite shutdown of mail, phone, and print operations | Used video conferencing technology and digital signatures to enhance interactions between IRS staff and taxpayers while maintaining safety |
| Ensuring IRS staff and taxpayer safety at IRS offices or taxpayer locations | Managed reentry to offices to allow staff to safely pick up or perform work |

Source: GAO analysis of Internal Revenue Service (IRS) information | GAO-22-105051

[a]Actions are not meant to correspond directly with the challenges on the same lines.

Because staff were not telework ready, IRS enforcement managers stated that many staff experienced downtime during the summer of 2020 while IRS acquired equipment so they could work from home. Downtime was also an issue for staff who had been doing much of their work remotely using IRS equipment before the pandemic, such as highly graded examination and collection staff who meet with taxpayers in the field and do the most complex work. Although these staff were telework ready, some of them could not do as much work as before the pandemic. If they did meet with taxpayers, they faced challenges in keeping the interactions safe.

Interruptions in support services, such as mail, phone, and print operations, also hampered resumption of enforcement activities. Many of these operations were not restarted until mid- or late summer 2020. As a result, IRS staff and taxpayers could not communicate with each other, leading to delays and increases in backlogged enforcement casework.

IRS managers and documents indicated that safety concerns among IRS staff and taxpayers were a major challenge related to the pandemic. When staff did go into the office to pick up or drop off paper case files, IRS faced logistical challenges in ensuring that staff stayed socially distant. IRS also had to ensure that taxpayers were kept safe during interactions with staff.

To understand and address enforcement staff concerns, IRS collected feedback in both formal and informal settings. For example, one division held virtual town hall meetings, while others sought feedback through an electronic mailbox. IRS managers said that staff feedback helped them address staff questions and concerns about resuming enforcement activities from safety and practical standpoints.

In addition to these agency-wide changes, individual IRS divisions made changes to address specific pandemic-related challenges. We discuss some division-specific changes below, based on interviews with enforcement managers and a review of related documents.

*LB&I examinations.* LB&I managers stated that most of their examiners were already telework ready, but that LB&I relied heavily on paper processes for case files located in its offices. LB&I arranged for staff to go into the office as needed to retrieve, print, and scan files and also provided staff with printers and scanners to work remotely. Additionally, LB&I changed its Information Document Request process. Normally, when taxpayers do not comply with a request to provide IRS with documents in a timely manner, IRS is authorized to obtain taxpayer documents through a summons. LB&I approved changes to make time frames more flexible and reduce the use of summonses since many corporate taxpayers' employees were not working in an office. The division also established a process by which examiners could virtually close an examination case without having to go into an office.

*SB/SE field and office examinations.* Given challenges with starting new examinations, SB/SE directed office examiners to work taxpayer claims and ongoing examinations that could be worked virtually. SB/SE used more virtual technology to allow field examiner staff to safely interact with taxpayers. Video conferencing proved to be popular with staff, and IRS is obtaining more licenses to allow its use. If examiners needed to retrieve documents from taxpayers, they arranged to meet outdoors. Further, SB/SE developed procedures to exchange information virtually through secure communication channels and set up a virtual Taxpayer Digital Communications pilot project at the Philadelphia campus.

*W&I correspondence examinations.* Because W&I examiners had not previously teleworked, IRS issued a memorandum in May 2020 that allowed work to be done outside of the office. To make the work portable, W&I managers scanned examination case files until safety protocols were established, and then clerks did the scanning. W&I also arranged for examiners to visit the campus to pick up paper files as needed. With the shutdown of mail operations, W&I initiated e-fax to allow taxpayers to send IRS documents. When phone and mail operations became more available during fall 2020, W&I changed telephone scripts and call routing to shorten call times and take more calls, according to IRS officials. IRS also initiated a call-back function in January 2021 that allows a taxpayer to receive a call from IRS rather than remain on hold.

*AUR.* Although AUR document matching is automated, interactions with taxpayers rely on a paper process. During the early stages of the pandemic, AUR management brought program managers onto the campuses to assess work to be done based on critical needs and staff availability. Managers determined what work was portable and which staff should work at the campuses. Because AUR's systems did not allow for document scanning, management had to decide how many clerks to bring in to a campus to prepare paper case files for AUR staff to pick up and work remotely.

*SB/SE field collection.* Field collection management said its staff were telework ready but were generally assigned more unfiled return work during the early part of the pandemic because this work is more automated and can be done without field visits, unlike unpaid tax cases. Field collection management provided guidance to carve out exceptions for certain unpaid tax work to continue, such as egregious employment tax returns, pyramid schemes, high-income taxpayers,

and high-risk cases where the government might lose the opportunity to collect money. Since September 2020, SB/SE has been changing the case mix to get back to a normal distribution of unfiled return and unpaid tax cases.

*SB/SE campus collection*.[618] Given that staff generally were not telework ready, management used the shutdown period to train staff to use new equipment to access phones and online systems. Automated Collection System (ACS) management said they opened some phone lines by mid-April of 2020. SB/SE suspended collection actions, but taxpayers could respond to collection notices and ask for hardship exceptions or to pay in installments. ACS and Compliance Services Collection Operations (CSCO) managers said that when the print sites reopened at the end of June 2020, IRS prioritized which notices involving unpaid taxes to send based on factors such as operational status and staff's ability to help taxpayers settle their accounts and to respond to taxpayer inquiries. IRS remained behind on notices until September 2020 after deciding to freeze sending new notices so that it could catch up on processing older notices. As a result, IRS delayed issuing some notices until November 2020.

CSCO set up dedicated e-fax lines so that taxpayers could submit documents electronically. SB/SE also scanned documents received by mail as much as possible to get work to remote staff. Further, ACS has been piloting an online text chat service with taxpayers, allowing taxpayers to authenticate their identities, send documents, and settle specific account issues. Another new feature allows taxpayers to request a telephone call-back from IRS at a specific time rather than remaining on hold. Also, IRS is attempting to reduce the number of people calling by redirecting taxpayers to online resources. Managers said that expanding self-help options has been a successful change to operations during the pandemic.

**Lessons learned.** Our review also looked at how IRS is tracking lessons learned from changes made to resume enforcement activities. Although IRS has not yet finalized its plans, enforcement managers across IRS said they were considering how to track the lessons learned. Similarly, these IRS managers stated that they are considering ways to assess changes that have been working well during the pandemic and that should be kept or revised. Recognizing a hesitancy to abandon processes and procedures that worked prior to the pandemic, IRS officials said they are asking staff to consider whether the pandemic-induced changes would help them work enforcement cases outside of a pandemic environment.

IRS managers stated that the agency recognizes the need to move from paper-based to more digital processes. Agency officials said that responding to challenges posed by the pandemic has encouraged this transition and has demonstrated that it can be done. Virtual tools that allow for video communication and sharing information electronically have shown signs of being useful. As a result, the enforcement managers we interviewed said these tools will be made available for staff if they find them useful and if taxpayers are willing to participate. Similarly, IRS is looking for ways to expand acceptance of digital signatures on electronic documents.

---

[618]Campus collection efforts to collect unpaid taxes or unfiled tax returns include the Automated Collection System, which sends notices and handles taxpayer calls, and the Compliance Services Collection Operations, which screens and sorts incoming taxpayer responses and creates inventory batches that are sent to the appropriate unit to be worked.

## Methodology

To describe the effect of the pandemic on IRS tax enforcement caseloads and revenue, we reviewed data in IRS systems for reporting on key enforcement programs using data points as of the end of June in fiscal years 2019 (prior to the pandemic), 2020 (during the height of the IRS shutdown due to the pandemic), and 2021 (the most recent available month). We identified the key programs by reviewing data on all of the enforcement activities of the three IRS divisions responsible for individual and business taxpayers—SB/SE, W&I, and LB&I—and, in consultation with IRS officials, we selected those areas generally recognized as having the greatest effects on the use of IRS resources to enforce tax laws. To describe the effect of the pandemic on staffing, we reviewed data on IRS staff use of Weather and Safety Leave and time working remotely or in the office. We assessed the reliability of the data by reviewing existing information about data IRS collects—specifically, the data dictionary and data validation methods—and by interviewing officials responsible for data reporting. We determined that the data were sufficiently reliable for the purpose of describing changes to IRS enforcement activities during the pandemic.

To identify the challenges faced by IRS during the pandemic and changes made to address those challenges, including any lessons learned, we interviewed division officials responsible for managing the programs and reviewed supporting data and documentation. We summarized the challenges and IRS's changes and interviewed IRS officials to corroborate the summary.

## Agency Comments

We provided IRS, the Department of the Treasury, and the Office of Management and Budget with a draft of this enclosure. They did not have any comments on this enclosure.

## GAO's Ongoing Work

We will continue to monitor IRS's administration of tax enforcement programs.

## Related GAO Product

*High Risk Series: Dedicated Leadership Needed to Address Limited Progress in Most High-Risk Areas.* GAO-21-119SP. Washington, D.C.: March 2, 2021.

**Contact information:** James R. McTigue Jr., (202) 512-6806, mctiguej@gao.gov

EXHIBIT "U"

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

07/15/2020 once normal business operations have resumed and upon expiration of the Taxpayer First Initiative.

ACTION DATE: 04/29/2020                         CREATE ID: 00000000

Systemic History: MODULE(S) UPDATED - ICS


LIEN DETERMINATION DUE DATES UPDATED TO 07/31/2020 DUE TO COVID-19


ACTION DATE: 05/09/2020                         CREATE ID: 00000000

Systemic History: HISTORY - IAT


THE IAT BATCH COMPLIANCE TOOL CONDUCTED IDRS RESEARCH. TRUST FUND DEPOSIT REQUIREMENTS ARE CURRENT. FILING REQUIREMENTS FOR THE PAST 16 MONTHS ARE CURRENT, CLOSED OR ASSIGNED AS A DEL RET


ACTION DATE: 06/06/2020                         CREATE ID: 00000000

Systemic History: HISTORY - IAT


THE IAT BATCH COMPLIANCE TOOL CONDUCTED IDRS RESEARCH. TRUST FUND DEPOSIT REQUIREMENTS ARE CURRENT. FILING REQUIREMENTS FOR THE PAST 16 MONTHS ARE CURRENT, CLOSED OR ASSIGNED AS A DEL RET


ACTION DATE: 06/18/2020  SYSTEM DATE: 06/18/2020  CONTACT: OTHER  CREATE ID: 22045903

GENERAL HISTORY


Access case for status with no-touch cases as part of FU op review.  Houston TM Detroit


ACTION DATE: 06/24/2020  SYSTEM DATE: 06/24/2020  CONTACT: PHONE  CREATE ID: 22044617

ATTEMPTED CONTACT
FULL COMPLIANCE CK
GENERAL HISTORY

Reviewed case.

ATTEMPTED CONTACT - TAXPAYER
     RESULTS:  I attempted to call the tp using the ICS listed phone numbers.  I received busy signals on both numbers and was unable to leave a vmm.

FULL COMPLIANCE CK

(b)(3):26
U.S.C. § 6103

SCPROD0000020

Thursday, June 30, 2022, 3:52 pm

REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION

Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST          TIN: 38-1685740

941 INFO  : Filing, Type of Depositor - LFR (per BMFOLI), 01/201906.  The tax due on the return was  $3,603,726.08.  The tp is a semi-weekly depositor.

: Current FTD - There are FTDs on the tax modules referenced below:

01/201903, -$2,379,258.02

01/201909, -$2,438,975.54

01/201912, -$3,239,168.17

01/202003, -$2,472,286.23

01/202006, -$2,957,186.75

940 INFO  : Filing - N/A

: Current FTD - N/A



(b)(3):26
U.S.C. § 6103

OTHER INFO: The tp is a Sole Proprietorship-In Business

There are also FTDs on tax module 03/201809 totaling $576.00.

THIRD-PARTY PAYER INFO: Payer's Identity and Type of Arrangement - N/A

PLAN OF ACTION:  The tp has several unfiled returns and an outstanding balance (possible penalty abatement) that needs to be addressed.  Due to COVID-19 and the Taxpayer First Initiative currently in effect through 07/15/2020, I am unable to make field calls, issue summons(es) to secure a CIS to determine collectability, file liens, issue levies, etc.  I will proceed with recommendation to close the case as a CNC-In Business case and schedule a follow-up within the next 12 to 18 months.

ACTION DATE: 06/25/2020  SYSTEM DATE: 06/25/2020  CONTACT: OTHER  CREATE ID: 22044617

GENERAL HISTORY
CLOSING NARRATIVE

CLOSING NARRATIVE

(b)(3):26 U.S.C.
§ 6103

941 INFO  : Filing, Type of Depositor - LFR (per BMFOLI), 01/201906.  The tax due on the return was  $3,603,726.08.  The tp is a semi-weekly depositor.

: Current FTD - There are FTDs on the tax modules referenced below:

SCPROD0000021

Thursday, June 30, 2022, 3:52 pm

```
                    REQUESTOR: 9810-1727
                  ARCHIVE HISTORY TRANSCRIPT
                    HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

01/201903, -$2,379,258.02

01/201909, -$2,438,975.54

01/201912, -$3,239,168.17

01/202003, -$2,472,286.23

01/202006, -$2,957,186.75

    940 INFO  : Filing - N/A

           : Current FTD - N/A

(b)(3):26 U.S.C. § 6103

    OTHER INFO: The tp is a Sole Proprietorship-In Business

There are also FTDs on tax module 03/201809 totaling $576.00.

    CIS secured on 9/27/2019

    Attempted Contact: 6/24/2020

    Field Call: 9/27/2019

    IRPTR: 9/27/2019

    Real Property Search: 9/27/2019

    Accurint: 9/7/2017

    Inc Tax Rtn/RTVUE/BRTVU/TRDBV: 5/3/2018

    CC AMDIS/Revenue Agent Report: 5/3/2018

    Full Compliance Check: 6/24/2020

The case of Schoolcraft Community College Dist was assigned to me on 08/17/2019 to address an outstanding balance and unfiled returns.  Initial contact was established via fc to the current ICS address.  Tp rights were provided verbally and via faxing of Pubs 1, 594, 1660 and Notice 609.  Review of the case yields that a penalty abatement may be necessary to resolve the outstanding balance. There are also several Form 941 returns that need to be filed.  Due to COVID-19 and the Taxpayer First Initiative, I am unable to make field calls, serve summonses, file liens, issues levies, complete trust fund investigations, etc.  I have attempted to call the tp during the pandemic but the contact attempts were

SCPROD0000022

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

(b)(5) Deliberative
Process Privilege;
(b)(7)(E)

**Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST          TIN: 38-1685740**

unsuccessful.  The trust fund is not applicable on this case.

I will also set
a mandatory follow-up for the case in February 2021.  I will also submit the unfiled returns
recommendation to close as little or no tax due.  I completed a Form 4844 and submitted it to AGM
J. Little requesting approval for input of TC 570 on tax modules 01/201903, 01/201909, 01/201912,
01/202003 and 03/201809.

---

ACTION DATE: 06/25/2020                              CREATE ID: 22044617

Systemic History: APPROVAL REQUEST

CNC/IN BUSINESS CORP   01/201812
                       01/201906
                       13/201612
                       13/201712

---

ACTION DATE: 06/25/2020                              CREATE ID: 22044617

Systemic History: APPROVAL REQUEST

DEL RET     NOT LIABLE/MINIMAL TAX     01/201903

---

ACTION DATE: 06/25/2020                              CREATE ID: 22044617

Systemic History: APPROVAL REQUEST

DEL RET     NOT LIABLE/MINIMAL TAX     01/201909

---

ACTION DATE: 06/25/2020                              CREATE ID: 22044617

Systemic History: TEMPLATES

TEMPLATE: FORM 4844 - REQ. FOR TERM. ACTION (LIMITED TO 28 PERIODS)

INCLUDED MODS:
  01/201903   01/201909

---

ACTION DATE: 06/29/2020                              CREATE ID: 22044606

Systemic History: ACTION APPROVED

APPROVED: DEL RET  NOT LIABLE/MINIMAL TAX 01/201903 TC 590 CC 052 HAS BEEN GENERATED

SCPROD0000023

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

```
LEVY SOURCE ADDED:
JPMORGAN CHASE BANK NA
COURT ORDER LEVY DEPARTMENT
RCO CENTRALIZED MAIL
MC-LA4-7200
700 KANSAS LN
MONROE, LA 712034774
```

ACTION DATE: 03/12/2021                         CREATE ID: 22044617

Systemic History: FORMS/CORRESPONDENCE


NOTICE OF LEVY 668A REQUESTED FOR:
    LIVONIA PUBLIC SCHOOLS           ( ENT-TYPE: STATE/GOVERNMENT )
    JPMORGAN CHASE BANK NA           ( ENT-TYPE: FINANCIAL INSTITUTION )

ADDRESS USED:
    SCHOOLCRAFT COMMUNITY COLLEGE DIST
    18600 HAGGERTY RD
    LIVONIA, MI 48152-3932003

3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
  01/201812 (P)     01/201906 (P)    13/201612 (P)    13/201712 (P)

Print request through CPS. Notice mailed on 3/16/2021


ACTION DATE: 03/12/2021  SYSTEM DATE: 03/12/2021  CONTACT: OTHER  CREATE ID: 22044617

GENERAL HISTORY


I filed the lien on the bmf account today.  I generated and issued levy notices today via the CPS
Dashboard.

I also organized the bmf account case file.

PLAN OF ACTION:  Levy follow-up.

ACTION DATE: 03/15/2021                         CREATE ID: 00000000

Systemic History: ALS RESPONSE


LIEN REQUESTED BY: 22044617.  ALS RESPONSE STATUS AND FILING LOCATION IS: LOADED SLID:
427089621!UNIFORM COMMERCIAL!MI!380001!

ACTION DATE: 03/15/2021                         CREATE ID: 00000000

Systemic History: ALS RESPONSE


LIEN REQUESTED BY: 22044617.  ALS RESPONSE STATUS AND FILING LOCATION IS: LOADED SLID:

Sensitive But Unclassified                                    SCPROD0000030

Thursday, June 30, 2022, 3:52 pm

```
┌─────────────────────────────────────────┐
│        REQUESTOR: 9810-1727              │
│      ARCHIVE HISTORY TRANSCRIPT          │
│        HISTORY INFORMATION               │
└─────────────────────────────────────────┘
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

AMERICAN EXPRESS TRAVEL RELATED SER   ( ENT-TYPE: BUSINESS )

THIS LEVY ATTACHES TO THE PROCEEDS OF ALL SALES COMPLETED BY THE TAXPAYER AT THE TIME THE LEVY IS
ISSUED, IRRESPECTIVE OF WHEN THE PROCESSOR PAYS THE TAXPAYER.  THIS LEVY MAY ATTACH TO FUNDS BEING
MAINTAINED IN A CHARGE BACK ACCOUNT OR ANY OTHER ACCOUNT WHICH SERVES A SIMILAR FUNCTION.
     PAYMENTECH LLC                      ( ENT-TYPE: BUSINESS )

THIS LEVY ATTACHES TO THE PROCEEDS OF ALL SALES COMPLETED BY THE TAXPAYER AT THE TIME THE LEVY IS
ISSUED, IRRESPECTIVE OF WHEN THE PROCESSOR PAYS THE TAXPAYER.  THIS LEVY MAY ATTACH TO FUNDS BEING
MAINTAINED IN A CHARGE BACK ACCOUNT OR ANY OTHER ACCOUNT WHICH SERVES A SIMILAR FUNCTION.
     TSYS MERCHANT SOLUTIONS            ( ENT-TYPE: BUSINESS )

THIS LEVY ATTACHES TO THE PROCEEDS OF ALL SALES COMPLETED BY THE TAXPAYER AT THE TIME THE LEVY IS
ISSUED, IRRESPECTIVE OF WHEN THE PROCESSOR PAYS THE TAXPAYER.  THIS LEVY MAY ATTACH TO FUNDS BEING
MAINTAINED IN A CHARGE BACK ACCOUNT OR ANY OTHER ACCOUNT WHICH SERVES A SIMILAR FUNCTION.
     FIRST NATIONAL BANK OF OMAHA       ( ENT-TYPE: BUSINESS )

THIS LEVY ATTACHES TO THE PROCEEDS OF ALL SALES COMPLETED BY THE TAXPAYER AT THE TIME THE LEVY IS
ISSUED, IRRESPECTIVE OF WHEN THE PROCESSOR PAYS THE TAXPAYER.  THIS LEVY MAY ATTACH TO FUNDS BEING
MAINTAINED IN A CHARGE BACK ACCOUNT OR ANY OTHER ACCOUNT WHICH SERVES A SIMILAR FUNCTION.
     PAYPAL INC                         ( ENT-TYPE: BUSINESS )

THIS LEVY ATTACHES TO THE PROCEEDS OF ALL SALES COMPLETED BY THE TAXPAYER AT THE TIME THE LEVY IS
ISSUED, IRRESPECTIVE OF WHEN THE PROCESSOR PAYS THE TAXPAYER.  THIS LEVY MAY ATTACH TO FUNDS BEING
MAINTAINED IN A CHARGE BACK ACCOUNT OR ANY OTHER ACCOUNT WHICH SERVES A SIMILAR FUNCTION.

ADDRESS USED:
   SCHOOLCRAFT COMMUNITY COLLEGE DIST
   18600 HAGGERTY RD
   LIVONIA, MI 48152-3932003


3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
   01/201812 (P)    01/201906 (P)    13/201612 (P)    13/201712 (P)

Print request through CPS. Notice mailed on 6/3/2021

ACTION DATE: 06/01/2021                          CREATE ID: 22044617

Systemic History: FORMS/CORRESPONDENCE


NOTICE OF LEVY 668A REQUESTED FOR:
     NELNET BUSINESS SOLUTIONS INC         ( ENT-TYPE: BUSINESS )
     SODEXO MANAGEMENT INC                 ( ENT-TYPE: BUSINESS )
     US CUSTOMS AND BORDER PROTECTION      ( ENT-TYPE: STATE/GOVERNMENT )

Sensitive But Unclassified

SCPROD0000042

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

ACTION DATE: 07/14/2021   SYSTEM DATE: 07/14/2021   CONTACT: OTHER   CREATE ID: 22045908

GENERAL HISTORY

Case accessed due to a call received from a new POA, Peter Salinger.  The case was not discussed as he was asked to supply the assigned RO with the updated power of attorney and establish contact. ATM T. Olubunmi, Detroit Territory

ACTION DATE: 07/15/2021   SYSTEM DATE: 07/15/2021   CONTACT: PHONE   CREATE ID: 22044531

TP/POA CONTACT
REVIEWED

TP/POA CONTACT
ACCESSSED CASE YESTERDAY 7/14 AND TODAY 7/15 AS ACTING GM.  NEW POA SUBMITTED 2848 AND CALLED DUE TO BEING UNABLE TO CONTACT THE RO ALL WEEK. I INFORMED THE RO IS OUT OF THE OFFICE THIS WEEK. SPOKE TO POA PETER SALINGER AND THE OWNER OF LEVY & ASSOCIATES, LAWRENCE LEVY WHO WAS QUITE UPSET WITH THE LACK OF RESPONSE/CONTACT AND LACK OF VM INDICATING LEAVE, ALTHOUGH IT WASN'T JUST FOR THIS CASE AS THEY HAVE HAD SEVERAL ISSUES WITH THIS WITH VARIOUS RO'S AND CASES RECENTLY.
THEY ALSO THOUGHT THIS CASE SHOULD BE LABELED AS A SENSITIVE CASE DUE TO IT BEING A PARTIAL NONPROFIT AND VERY WELL KNOWN SCHOOL.  I SUGGESTED THAT THEY CAN ADDRESS THAT WITH THE RO AS THIS IS MY LAST DAY OF AGM.
THEY ASKED FOR RELEASE OF THE LEVIES AND STATED NOW THAT THEY ARE ON THE CASE, THEY WILL WORK DILIGENTLY TO RESOLVE. I ADVISED OF THE MISSING DEL RETS 01/201903, 201909-202106 AND 03/201809.  THEY WERE UNAWARE OF THE AMOUNT OF MISSING RETURNS AND DISCUSSED TP APPEARS TO BE DOING SOMETHING INCORRECT IN THEIR PROCESS.  THEY DO HAVE CURRENT FTDS. POA WILL GET RETURNS TOGETHER AND FAX TO RO WILLIAMS ASAP.  HE WILL ALSO FAX AN ABATEMENT REQUEST FOR 01/201906 AND WILL DISCUSS PAYING THE SMALLER BAL DUES IN FULL WITH THE TP. HE ACKNOWLEDGES THAT W2S FOR 2017 WERE FILED LATE SO ABATEMENT ON THOSE WILL MOST LIKELY NOT BE GRANTED.  HE WILL WORK WITH RO WILLIAMS ON RESOLVING THAT.
DUE TO THE LEVEL OF SENSITIVITY WITH THE CASE, FORD IS UPSET WITH THE LEVY AS THEY PAY TP FOR LEASING SPACE AND HAS SAID PERHAPS THEY SHOULD TAKE THEIR BUSINESS ELSEWHERE, AND THE FACT THAT THE TM HAD TO GET INVOLVED, I STATED I WILL RELEASE THE LEVIES TODAY THAT ARE IN CONCERN, NELNET, FORD AND THE CC PROCESSORS.  I WILL MAIL ALL AS WELL AS FAX TO POA.  I INFORMED POA THAT I WILL EMAIL RO WILLIAMS AND ASK THAT SHE CONTACT HIM ASAP MONDAY TO DISCUSS AND START A NEW PLAN FOR RESOLUTION AND REMINDED HIM THAT ENFORCEMENT MAY BE A FUTURE CONSEQUENCE OF THAT PLAN IF NOT FULFILLED.  HE UNDERSTOOD.

ACTION DATE: 07/15/2021                              CREATE ID: 22044531

Systemic History: FORMS/CORRESPONDENCE

FULL LEVY RELEASE FOR 668A ISSUED 6/1/2021 TO AMERICAN EXPRESS TRAVEL RELATED SER

ENTITY TYPE: FINANCIAL INSTITUTION

3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
  01/201812 (P)     01/201906 (P)     13/201612 (P)     13/201712 (P)

SCPROD0000050

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

**Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST**                    **TIN: 38-1685740**

ACTION DATE: 07/15/2021                              CREATE ID: 22044531

Systemic History: FORMS/CORRESPONDENCE


FULL LEVY RELEASE FOR 668A ISSUED 6/1/2021 TO PAYMENTECH LLC


ENTITY TYPE: FINANCIAL INSTITUTION

3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
  01/201812 (P)    01/201906 (P)    13/201612 (P)    13/201712 (P)

ACTION DATE: 07/15/2021                              CREATE ID: 22044531

Systemic History: FORMS/CORRESPONDENCE


FULL LEVY RELEASE FOR 668A ISSUED 6/1/2021 TO TSYS MERCHANT SOLUTIONS


ENTITY TYPE: FINANCIAL INSTITUTION

3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
  01/201812 (P)    01/201906 (P)    13/201612 (P)    13/201712 (P)

ACTION DATE: 07/15/2021                              CREATE ID: 22044531

Systemic History: FORMS/CORRESPONDENCE


FULL LEVY RELEASE FOR 668A ISSUED 6/1/2021 TO NELNET BUSINESS SOLUTIONS INC


ENTITY TYPE: BUSINESS

3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
  01/201812 (P)    01/201906 (P)    13/201612 (P)    13/201712 (P)

ACTION DATE: 07/15/2021                              CREATE ID: 22044531

Systemic History: FORMS/CORRESPONDENCE


FULL LEVY RELEASE FOR 668A ISSUED 6/1/2021 TO FORD MOTOR COMPANY


ENTITY TYPE: BUSINESS

3RD PARTY CONTACT RECORD(S) GENERATED. INCLUDED MODULE(S) :
  01/201812 (P)    01/201906 (P)    13/201612 (P)    13/201712 (P)

ACTION DATE: 07/15/2021  SYSTEM DATE: 07/15/2021  CONTACT: OTHER  CREATE ID: 22044531

REVIEWED
```

SCPROD0000051

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

I FORWARDED THE 2848 TO RO WILLIAMS VIA EMAIL.  I FAXED ALL THE LEVY RELEASES TO POA SALINGER AND MAILED ORIGINALS TODAY.

ACTION DATE: 07/19/2021   SYSTEM DATE: 07/19/2021   CONTACT: PHONE   CREATE ID: 22044617

```
TP/POA CONTACT
PAYMENT/DEL RET REQUESTED
FULL COMPLIANCE CK
DEADLINE GIVEN
GENERAL HISTORY
PUB 1 VERIFIED
REVIEWED
PUB 1660 VERIFIED
PUB 594 VERIFIED
FORM 9297 PROVIDED
```

While on leave last week, I received the following faxes:

the first from the previous POA– Mr. Scott Wallace requesting that I fax copies of the Form 9297, 6020B package etc.,

the second a Form 2848 from Levy & Associates identifying Mr. Peter Salinger, EA as POA,

the third a second copy of the Form 2848 from Levy & Associates forwarded to me by Acting GM K. Graveline, and

the fourth containing two Form 843 (illegible) from the new POA for tax modules 01/201906 and 13/201712.

I received two pcs/vmms from the following individuals at Levy and Associates while on leave.  The first was from Lawrence Levy stating that the tp was a new client.  He also asked that I call and discuss the case with Peter Salinger, EA.  The following phone number was provided for contact- 248-557-4048.  The second call was from Peter Salinger requesting a return pc at the same previously referenced phone number.  PC/VMM ended.

I also reviewed the case history entries from last week's acting GM K. Graveline.  I spoke with K. Graveline today via phone to discuss her contacts with the tp last week prior to my contacting the POA today.

TP/POA CONTACT - I called the POA today and contact was established.  The POA stated that the tp became their client last week and he faxed the Form 2848 to me.  I confirmed receipt.  The POA stated that he has a phone conference scheduled with the tp tomorrow afternoon to discuss the case.  He stated he faxed over two Form 843s on Friday, 07/16/2021.  I told the POA that I received the fax but the forms were illegible.  I also told the POA that his client should provide a letter of explanation requesting reasonable cause relative to tax modules 01/201906 and 13/201712.  I told the POA that I would review the letter(s) and if I concurred, I would forward the requests to my GM with a

SCPROD0000052

Thursday, June 30, 2022, 3:52 pm

```
┌─────────────────────────────────────────┐
│         REQUESTOR: 9810-1727             │
│      ARCHIVE HISTORY TRANSCRIPT          │
│       HISTORY INFORMATION                │
└─────────────────────────────────────────┘
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

I FORWARDED THE 2848 TO RO WILLIAMS VIA EMAIL.   I FAXED ALL THE LEVY RELEASES TO POA SALINGER AND MAILED ORIGINALS TODAY.

ACTION DATE: 07/19/2021   SYSTEM DATE: 07/19/2021   CONTACT: PHONE   CREATE ID: 22044617

```
TP/POA CONTACT
PAYMENT/DEL RET REQUESTED
FULL COMPLIANCE CK
DEADLINE GIVEN
GENERAL HISTORY
PUB 1 VERIFIED
REVIEWED
PUB 1660 VERIFIED
PUB 594 VERIFIED
FORM 9297 PROVIDED
```

While on leave last week, I received the following faxes:

the first from the previous POA- Mr. Scott Wallace requesting that I fax copies of the Form 9297, 6020B package etc.,

the second a Form 2848 from Levy & Associates identifying Mr. Peter Salinger, EA as POA,

the third a second copy of the Form 2848 from Levy & Associates forwarded to me by Acting GM K. Graveline, and

the fourth containing two Form 843 (illegible) from the new POA for tax modules 01/201906 and 13/201712.

I received two pcs/vmms from the following individuals at Levy and Associates while on leave.  The first was from Lawrence Levy stating that the tp was a new client.  He also asked that I call and discuss the case with Peter Salinger, EA.  The following phone number was provided for contact- 248-557-4048.  The second call was from Peter Salinger requesting a return pc at the same previously referenced phone number.  PC/VMM ended.

I also reviewed the case history entries from last week's acting GM K. Graveline.  I spoke with K. Graveline today via phone to discuss her contacts with the tp last week prior to my contacting the POA today.

TP/POA CONTACT - I called the POA today and contact was established.  The POA stated that the tp became their client last week and he faxed the Form 2848 to me.  I confirmed receipt.  The POA stated that he has a phone conference scheduled with the tp tomorrow afternoon to discuss the case.  He stated he faxed over two Form 843s on Friday, 07/16/2021.  I told the POA that I received the fax but the forms were illegible.  I also told the POA that his client should provide a letter of explanation requesting reasonable cause relative to tax modules 01/201906 and 13/201712.  I told the POA that I would review the letter(s) and if I concurred, I would forward the requests to my GM with a

SCPROD0000052

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
| --- | --- |

recommendation for approval.  I told the POA that if the requests were not approved,
then I would forward a denial letter that advised of their appeal rights.  I also told
the POA that the abatement request for tax module 13/201712 is a CAWR/FUTA issue and
may not be approved.   The POA responded okay and asked if the tp would still have appeal
rights.  I responded yes.

TAXPAYER RIGHTS PUBLICATIONS
  Publication 1 Verified
   It was previously received by TP/POA.
   Provided explanation of contents on 07/19/2021.
   Answered questions on 07/19/2021.
  Publication 594 Verified
   Provided explanation of contents on 07/19/2021.
   Answered questions on 07/19/2021.
  Publication 1660 Verified
   Provided explanation of contents on 07/19/2021.
   Answered questions on 07/19/2021.

PAYMENT/DEL RET REQUESTED
  RESULTS: I told the POA that returns for the following tax modules need to be filed:

01/201903

01/201909

01/201912

01/202003

01/202006

01/202009

01/202012

01/202103

01/202106 (due 07/31/2021)

03/201806

03/201809 (credit in the amount of $576.00 per BMFOLT)

03/201909

03/202106 (due 07/31/2021).

I told the POA that I've already prepared and mailed a 6020B package to the tp for the
above-listed Form 941 returns and I explained that if the original

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |

returns weren't received, then the 6020B returns would be submitted for processing.
The POA stated that he understood and explained that they just learned that several
returns had not been filed.  He stated that he also explained to the tp that it's a
lengthy process to get the 6020B returns adjusted if processed.

The POA stated that the tp would be paying the smaller balances on the account and
requesting an abatement of the larger amounts on tax modules 01/201906 and 13/201712.

I told the POA that I would only give a short deadline for the tp to submit the unfiled
returns, penalty abatement requests and balances for the remaining periods and I
informed the POA that levy enforcement and 6020B processing would occur if the deadline
of 08/02/2021 was missed.  The POA stated that he understood.

FULL COMPLIANCE CK                                                    (b)(3):26 U.S.C. § 6103

    941 INFO  : Filing, Type of Depositor - LFR (per BMFOLI), 01/201906.  The tp is
classified as a monthly depositor per BMFOLK; however, there are unfiled returns on
the account.

            : Current FTD - There are FTDs on the following tax modules:

01 201903          2,379,258-
01 201909          2,438,976-
01 201912          3,239,168-
01 202003          2,472,286-
01 202006          3,554,036-
01 202009          2,399,866-
01 202012          3,390,628-
01 202103          2,413,494-
01 202106          3,678,943-
01 202109            430,107-

    940 INFO  : Filing - N/A

            : Current FTD - N/A



                                                                     (b)(3):26 U.S.C. § 6103

    OTHER INFO: The tp is a Sole Proprietorship-In Business.

The tp also has a Form 720 filing requirement and the last form filed was for tax module
03/202006.

SCPROD0000054

Thursday, June 30, 2022, 3:52 pm

REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

THIRD-PARTY PAYER INFO: Payer's Identity and Type of Arrangement - N/A

Prior to concluding the pc with the POA, I spoke to him about the history of the case with myself and previous ROs and their lack of responsiveness.  I explained that the enforcement action taken on the account was because of their failure to respond after several contact attempts were made.  I reiterated that if the the deadline was missed, I would proceed with 6020B processing and levy enforcement again.  The POA stated that he understood.  I secured his fax number.  The POA provided- 248-416-1509.  He also provided his efax number- 561-288-2622.  I told the POA that I would fax the Form 9297 to him today.  The POA responded okay.

I asked the POA if he had additional questions.  The POA asked if the bmf account was considered a "sensitive case".  I responded no.  The POA responded okay.

PC ended.


DEADLINE GIVEN
     DATE DUE: 08/02/2021
     ACTION: Tp to provide the unfiled returns, abatement requests and full payment per the Form 9297 referenced below
     CONSEQUENCES: 6020B Processing and Levy Enforcement

I faxed the Form 9297 referenced below to the POA using both of the fax numbers that he provided.  I received confirmation that they transmitted successfully.  A blank Form 433-B and a payoff calculation through 08/02/2021 was included with the fax.

-------Fax Transmission Report-------

To: Mr. Peter Salinger, EA at (248) 416-1509 Subject of Fax: Summary of Taxpayer Contact (Form 9297)
Result: The transmission was successful.
Description: ok
Result Code:0000
Pages Sent: 010
Sent at: 07/19/21 17:40 CT
Connect Time
Retry Count: 0
Remote CSI: 2484161509

-------Fax Transmission Report-------

To: Mr. Peter Salinger, EA at (561) 288-2622 Subject of Fax: Summary of Taxpayer Contact (Form 9297)
Result: The transmission was successful.
Description: ok
Result Code:0000

SCPROD0000055

Thursday, June 30, 2022, 3:52 pm

REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION

Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST          TIN: 38-1685740

Pages Sent: 010
Sent at: 07/19/21 17:40 CT
Connect Time
Retry Count: 0
Remote CSI: HFR

# Summary of Taxpayer Contact

**Taxpayer's Name**  SCHOOLCRAFT COMMUNITY COLLEGE DIST   **Taxpayer's ID #**  38-1685740

*The contents of Publication 1, Your Rights as a Taxpayer, and Publication 594, The IRS Collection Process were outlined and discussed with you.   This form, along with copies of the publications as appropriate, were provided to you.*

*In order to determine the appropriate resolution of your case, we need to calculate/verify your ability to pay the tax delinquencies, and ensure that you remain in current compliance with applicable filing and paying requirements.   To assist us in doing so, please provide the following information/documents by the date required:*

**Information/Documents required  Date Required**

Outstanding Balance Due $368,634.78 (See the attached Payoff Calculation) -OR-   Collection Information Statement for Businesses (Form 433-B) Full Statements for all Checking, Investment and Savings Accounts held by the business covering the period of January 2021 through June 2021.     08/02/2021
Form 941 Returns with Schedule B attached for the following tax periods ended:  03/31/2019, 09/30/2019, 12/31/2019 03/31/2020, 06/30/2020, 09/30/2020, 12/31/2020   03/31/2021, 06/30/2021 (Return Due 07/31/2021), 09/30/2021 (Return Due 10/31/2021)     08/02/2021
Form 720 Returns for periods ended:   06/30/2018, 09/30/2018, 09/30/2019, 09/30/2020, 06/30/2021 (Return Due 07/31/2021), 09/30/2021 (Return Due 10/31/2021) 08/02/2021
Letter(s) of Explanation establishing reasonable cause for Form 941 period ended 06/30/2019 and Civil Penalty period ended 12/31/2017  08/02/2021
    Additional information may be requested upon receipt and review of the Form 433-B, if submitted.   Also, please sign and date all
    returns to prevent processing delays.

    Attachments-
    Payoff Calculation through 08/02/2021
    Blank Form 433-B

**Notification of consequences of failure to meet the above deadlines:** Failure to meet the above deadlines by the specified date(s) may require the IRS to take certain actions, such as issuing a summons, issuing a Notice of Levy, or other actions as specified below. Levy Enforcement

**Revenue Officer Name and Employee Identification Number**  TONIESSIA WILLIAMS - 1000237202   **Date** 07/19/2021   **Telephone / Fax Number** (248)699-9552 Fax - (888)323-7468
**Office Address**  38275 W. 12 MILE ROAD SUITE 200 FARMINGTON HILLS, MI 48331
**Form 9297 (Rev. 5-2009)** Department of the Treasury -- Internal Revenue Service

---

ACTION DATE: 07/20/2021  SYSTEM DATE: 07/20/2021  CONTACT: PHONE  CREATE ID: 22044617

TP/POA CONTACT
OTHER 3RD PARTY CONT.
GENERAL HISTORY

SCPROD0000056

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

confirmed receipt.  I explained why I provided a payoff for the entire account and not just the smaller balances that the tp is supposedly going to pay.  The POA stated that he understood.  I also told the POA to contact me as discussed, if needed, after his meeting with the tps.  The POA responded okay.  Lastly, I gave the POA the name and phone number of the acting GM for this week.  The POA was appreciative.  PC ended.

(b)(5) Deliberative
Process Privilege

ACTION DATE: 07/20/2021   SYSTEM DATE: 07/20/2021   CONTACT: OTHER   CREATE ID: 22044617

GENERAL HISTORY

I completed a Sensitive Case Report (SCR) Form today and emailed it to Acting GM L. Seely for handling.

ACTION DATE: 07/21/2021   SYSTEM DATE: 07/21/2021   CONTACT: PHONE   CREATE ID: 22044682

TP/POA CONTACT

TP/POA CONTACT  Rec'd VM from POA, Mr Salinger. GM returned PC, spoke to Mr Salinger. Verified Publ, previously discussed. POA is concerned about levies which were released recently. He advised proceeds have been sent. GM advised if proceeds were issued prior to levy released on 7/15/21, RO will apply payments per levy. If funds are drawn on 7/15/21 or after then RO will return funds with copy of levy release to levy source. RO can notify POA if this occurs, so they can moniter refund status to levy sources. POA stated he has deadlines in place with RO assigned and they are amicably working toward resolution, however due to fact funds are now being held from levy sources and POA is new to account F9423 may be forthcoming. GM advised TP has right to CAP and GM will hold conference and fwd to appeals if rec'd per IRM.

ACTION DATE: 07/21/2021   SYSTEM DATE: 07/21/2021   CONTACT: PHONE   CREATE ID: 22044617

GENERAL HISTORY
ATTEMPTED CONTACT - POA

ATTEMPTED CONTACT - POA
    RESULTS: I received a pc/vmm from the POA- Mr. Peter Salinger on my office and work cell phone numbers.  The POA requested a return pc and provided the following phone number for contact- 248-557-4048.  PC/VMM ended.

I returned the POA's pc and was told by the receptionist that the POA was on another pc.  I left a message requesting a return pc.  I provided my work cell phone number for

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

contact.  PC ended.

ACTION DATE: 07/21/2021  SYSTEM DATE: 07/21/2021  CONTACT: PHONE   CREATE ID: 22044617

TP/POA CONTACT
GENERAL HISTORY

TP/POA CONTACT - I received a return pc from the POA- Mr. Peter Salinger.  The POA provided the following updates regarding his phone conference with the tp held yesterday afternoon:

-the tp has hired Levy and Associates to ensure that they are meeting their return filing requirements

-they expect to submit signed and dated copies of the unfiled returns per the Form 9297 within a couple of days

-the tp files Form 720 annually and will be requesting a credit transfer between tax modules 03/201809 and 01/201806

-they are gathering information for the POA to complete the abatement requests for tax modules 01/201906 and 13/201712

-they are expected to full pay the smaller balances.  The POA stated that he advised the tps that the smaller balances appear to be legitimate and should just be paid.

The POA stated that he explained to the tps that he understood why I (RO Williams) took the actions that I did on the case.  He also stated that he has explained to them that they have to do their part in order to reach a case resolution.  I responded okay.

I told the POA that a levy payment was received from NelNet Business for the full amount due on the case and that I was going to return it to the levy source with a copy of the levy release because the check is dated 07/15/2021- the date that the levy was released.  The POA responded okay and stated that he had spoken with my Acting GM L. Seely this morning and the following was explained to him-

any levy check received with a date of 07/14/2021 will be processed and they could file an appeal or CAP,

any levy check received with a date of 07/15/2021 will be returned to the levy source.

The POA asked if I would contact him if additional levy payments are received so that we could confirm the dates on the checks.  I responded okay.

The POA stated that they hoped to meet the deadlines for resolution of the case.  I responded okay and reiterated the previously stated consequences.

PC ended.

After speaking with the POA, I spoke to the Acting GM L. Seely regarding the case,

SCPROD0000059

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

received levy payment and her discussion with the POA.  I also read her history note relative to her phone discussion with the POA.  I also received an email from the Acting GM regarding the SCR and updates that need to be made to the form before submitting to the TM.

I also spoke to GM H. Boyd today regarding the case after I received an email from her requesting that I call or Skype her.

PLAN OF ACTION:  Proceed with deadline requirements per the Form 9297 issued on 07/19/2021.  Will also update the SCR and submit for approval.

---

ACTION DATE: 07/21/2021  SYSTEM DATE: 07/21/2021  CONTACT: OTHER  CREATE ID: 22044617

GENERAL HISTORY

Updated the Sensitive Case Report (SCR) as advised by AGM L. Seely and emailed it to her and cc'd GM H. Boyd.

---

ACTION DATE: 07/22/2021  SYSTEM DATE: 07/22/2021  CONTACT: OTHER  CREATE ID: 22061101

GENERAL HISTORY

Case accessed due to SCR received.
T. Runion, Acting Senior Technical Analyst, Central Area.

---

ACTION DATE: 07/22/2021  SYSTEM DATE: 07/22/2021  CONTACT: OTHER  CREATE ID: 22044601

---

ACTION DATE: 07/22/2021                    CREATE ID: 22044617

Systemic History: MODULE(S) UPDATED - ICS

(b)(5) Deliberative Process Privilege; (b)(5) Attorney/Client Privilege; (b)(5) Attorney Work Product Privilege

REMITTANCE SECURED:  01/201906  TC 670  7/15/2021   -$46,504.52  DPC: 05
          REMARKS: JPMorgan Chase Bank NA - Levy Proceeds - CK No. 4556922919

Thursday, June 30, 2022, 3:52 pm

```
┌─────────────────────────────────────────────┐
│              REQUESTOR: 9810-1727            │
│          ARCHIVE HISTORY TRANSCRIPT          │
│              HISTORY INFORMATION             │
└─────────────────────────────────────────────┘
```

(b)(3) 26 U.S.C.
§ 6103

```
┌──────────────────────────────────────────────────────────────────┐
│   Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST          TIN: 38-1685740 │
└──────────────────────────────────────────────────────────────────┘
```

03/201806 - Bal Due per return $576.00 / FTDs per BMFOLT $0.00

03/201809 - FTDs per BMFOLT $576.00.

PLAN OF ACTION: I will contact the POA on the next business day to discuss the above-referenced
returns. Review of the returns yields several numeric errors and an incorrect EIN 38-1687420
                                                                      Upon securing corrected
returns, I will submit them for posting to the account.

I closed several levies based on the third party responses received. I also generated several full
levy releases and will mail them accordingly- Part 1 to respective third party and Part 2 to tp/copy
to the POA of record.

---

ACTION DATE: 07/29/2021  SYSTEM DATE: 07/29/2021  CONTACT: PHONE  CREATE ID: 22044617

TP/POA CONTACT
FULL COMPLIANCE CK
GENERAL HISTORY
PUB 1660 VERIFIED
CAUSE AND CURE
ATTEMPTED CONTACT - POA


ATTEMPTED CONTACT - POA
     RESULTS: I called the POA this morning and was told by the receptionist that he was on another
pc. I left a message with the receptionist requesting a return pc from the POA. I provided my name,
office phone number and work cell phone number for contact. The receptionist responded okay.  PC/VMM
ended.

TP/POA CONTACT - I received a return pc from the POA on my work cell phone a little over 15 minutes
after my above-referenced pc. I confirmed and/or discussed the below-listed items with the POA based
on the faxes received on 07/23/2021 and 07/28/2021. The POA stated that he is not sending faxes
to me, but they are coming from Lawrence Levy who is putting his (the POA) name on them. I proceeded
to discuss the following:

-I've completed a sensitive case report and will update while the case is open for the bmf account
due to the nature of issues involved i.e. large dollar amount, levy enforcement and third party
involvement and not just because they are a large university,

-I will proceed with processing the signed and dated Form 720 received on 07/28/2021 for the 2nd
QTR of 2018 but I still need the written credit transfer request to move the funds from tax module
03/201809 to 03/201806. The POA stated that the credit transfer request was forthcoming,

-I cannot process the Form 941 returns received -until corrected- for tax periods ended 201912,
202003, 202006, 202009, 202012 and 202103 for the following reasons: identifying information (tp
name and EIN) not reported on all pages of each return, incorrect EIN (38-1687420 instead of the
assigned EIN 38-1685740) on the Form 941 returns for all four QTRs of 2020 and incorrect input of
the total taxes and FTD amounts on respective tax
```

Thursday, June 30, 2022, 3:52 pm

```
REQUESTOR: 9810-1727
ARCHIVE HISTORY TRANSCRIPT
HISTORY INFORMATION
```

(b)(5) Attorney/Client Privilege

| Name: SCHOOLCRAFT COMMUNITY COLLEGE DIST | TIN: 38-1685740 |
|---|---|

periods ended 202012 and 202103.  The POA stated that he would discuss these errors with his client this afternoon,

-levy payments received from Nelnet Business Solutions and JPMorgan Chase Bank were actually posted to the account based on review of the case by Area Counsel

I read to the POA, the history note input by GM H. Boyd on 07/22/2021. I told the POA that his clients can have the right to file an Appeal/CAP.  The POA responded with the following- "I'm going to go ahead and prepare the paperwork for the CAP because Lawrence is going to make me do so even though I know where its gonna go."  I responded "okay",

-I confirmed that I completed full levy releases to all other levy sources and mailed them out yesterday with copies sent to the tp and him (the POA).  The POA specifically asked about "Webasto (Convertibles USA Inc)".  I confirmed that a levy release was sent to Webasto also,

-I stated that I needed to send paperwork to the client regarding an additional form (Form 990-did not disclose to the POA) that may need to be filed; however, I can't discuss with him (the POA) because it is not covered by the Form 2848.  I asked the POA for the name and fax number of his contact at the school so that I could forward the additional information today via fax and they can provide it to him.  The POA responded "okay" and stated that he is scheduled to talk with "Jon, CFO" today and would call me back.  I responded okay and confirmed that his contact's full name was "Jon Lamb". I also told the POA that I had Jon Lamb listed as the school's controller.  The POA responded "that's sounds correct",

The POA also stated that they are almost done with the abatement request and expect to submit it to me by the deadline provided of 08/02/2021.  I responded okay.

TAXPAYER RIGHTS PUBLICATIONS
  Publication 1660 Verified
    Provided explanation of contents on 07/29/2021.
    Answered questions on 07/29/2021.

FULL COMPLIANCE CK
  1040 INFO : Filing - N/A

           : Current ES/Withholding - N/A

  941 INFO : Filing, Type of Depositor - LFR (per BMFOLI), 01/201906.  The tp is a semi-weekly depositor.

           : Current FTD - The following tax modules yields FTDs:

           01 201903   2,379,258-

           01 201909   2,438,976-

SCPROD0000067

EXHIBIT "V"

**INTERNAL REVENUE SERVICE**



## FAX TRANSMISSION
### Cover Sheet

Date: July 15, 2021

# To: PETER SALINGER

Address/Organization: _____

Fax Number:   (248) 416-1509 _____   Office Number: _____

# From:   Graveline Kerry A

Address/Organization: _____

Fax Number:  (888) 803-1501 _____   Office Number: _____

Number of pages:   | 7 |   *Including cover page*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Subject:**  F668d4

This communication is intended for the sole use of the individual to whom it is addressed and may contain confidential information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited by the provisions of the Internal Revenue code.  If you have received this communication in error, please contact the sender immediately by telephone. Thank you.

Form **668-D**
(May 2018)

Department of the Treasury - Internal Revenue Service

# Release of Levy/Release of Property from Levy

| To | Taxpayer(s) |
|---|---|
| NELNET BUSINESS SOLUTIONS INC<br>PO BOX 82527<br>LINCOLN, NE 68501 | SCHOOLCRAFT COMMUNITY COLLEGE DIST<br>18600 HAGGERTY RD<br>LIVONIA, MI 48152-3932003 |

**Identifying Number(s)**
38-1685740

A notice of levy was served on you and demand was made for the surrender of:

☒ All property, rights to property, money, credits and bank deposits of the taxpayer(s) named above, except as provided in 6332(c) of the Internal Revenue Code—"Special Rule For Banks." See the back of this form regarding this exception.

☐ Wages, salary and other income, now owed to or becoming payable to the taxpayer(s) named above.

---

**The box checked below applies to the levy we served on you.**

---

### Release of Levy

☒ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits of the taxpayer(s) named above are released from the levy.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

---

### Release of Property from Levy

☐ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits greater than  are released from the levy. The levy now attaches only to this amount.

☐ Under the provision of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits up to the amount of _ are released from the levy. The levy continues to attached to all amounts greater than_.

☐ The last payment we received from you was  dated _. The amount the taxpayer still owes is . When this amount is paid to the Internal Revenue Service, the levy is released. If you sent us a payment after the last payment date shown, subtract that from the amount you send now.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income ☐ **greater than** ☐ **less than** each _ now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

Dated at <u>FARMINGTON HILL, MI,</u>                        <u>July 15, 2021</u>

*(Place)*                                          *(Date)*

| Signature | Telephone Number | Title |
|---|---|---|
| KERRY A GRAVELINE | (248)699-9587 | ACTING MANAGER |

---

## Excerpts from the Internal Revenue Code

### Sec. 6332 Surrender of Property Subject to Levy

(c) **Special Rule for Banks.**—Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

### Sec. 6343. Authority to Release Levy and Return Property

(a) **Release of Levy and Notice of Release.**—

(1) **In general.**—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) **Expedited determination of certain business property.**—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) **Subsequent levy.**—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) **Return of property.**— If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return . . . an amount of money equal to the amount of money levied upon . . . . An amount equal to the amount of money levied upon . . . may be returned at any time before the expiration of 2 years from the date of such levy. . . .

(d) Return of Property in Certain Cases.—If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

**Useful Item You may want to see:**

• Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b).

• Publication 5149, Making an Administrative Return of Property Claim Under Internal Revenue Code (IRC) Section 6343(d).

| Form **668-D**<br>(May 2018) | Department of the Treasury - Internal Revenue Service<br>**Release of Levy/Release of Property from Levy** |
|---|---|

| To<br><br>NELNET BUSINESS SOLUTIONS INC<br>PO BOX 82527<br>LINCOLN, NE 68501 | Taxpayer(s)<br>SCHOOLCRAFT COMMUNITY COLLEGE DIST<br>18600 HAGGERTY RD<br>LIVONIA, MI 48152-3932003 |
|---|---|
| | Identifying Number(s)<br>38-1685740 |

A notice of levy was served on you and demand was made for the surrender of:

☒  All property, rights to property, money, credits and bank deposits of the taxpayer(s) named above, except as provided in 6332(c) of the Internal Revenue Code--"Special Rule For Banks."  See the back of this form regarding this exception.

☐  Wages, salary and other income, now owed to or becoming payable to the taxpayer(s) named above.

---

**The box checked below applies to the levy we served on you.**

**Release of Levy**

☒  Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits of the taxpayer(s) named above are released from the levy.

☐  Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

---

**Release of Property from Levy**

☐  Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits greater than   are released from the levy.  The levy now attaches only to this amount.

☐  Under the provision of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits up to the amount of _ are released from the levy.  The levy continues to attached to all amounts greater than_.

☐  The last payment we received from you was _ dated _.  The amount the taxpayer still owes is  .  When this amount is paid to the Internal Revenue Service, the levy is released.  If you sent us a payment after the last payment date shown, subtract that from the amount you send now.

☐  Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income ☐ **greater than** ☐ **less than**  each _now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

---

Dated at FARMINGTON HILL, MI,                                                                July 15, 2021
          *(Place)*                                                                                         *(Date)*

| Signature<br>KERRY A GRAVELINE | Telephone Number<br><br>(248)699-9587 | Title<br><br>ACTING MANAGER |
|---|---|---|

## Excerpts from the Internal Revenue Code

### Sec. 6332 Surrender of Property Subject to Levy

(c) **Special Rule for Banks** .—Any bank *(as defined in section 408(n))* shall surrender *(subject to an attachment or execution under judicial process)* any deposits *(including interest thereon)* in such bank only after 21 days after service of levy.

### Sec. 6343. Authority to Release Levy and Return Property

(a) **Release of Levy and Notice of Release**.—

(1) **In general**.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made *(if any)* that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) **Expedited determination of certain business property**.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) **Subsequent lev**y.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) **Return of property**.— If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return . . . an amount of money equal to the amount of money levied upon . . . . An amount equal to the amount of money levied upon . . . may be returned at any time before the expiration of 2 years from the date of such levy. . . .

(d) Return of Property in Certain Cases.—If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

**Useful Item You may want to see:**

• Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b).

• Publication 5149, Making an Administrative Return of Property Claim Under Internal Revenue Code (IRC) Section 6343(d).

07/15/2021 7:12:11 AM -0500 IRS                                   PAGE 6   OF 7

| Form **668-D**<br>(May 2018) | Department of the Treasury - Internal Revenue Service<br>**Release of Levy/Release of Property from Levy** |

| To<br><br>NELNET BUSINESS SOLUTIONS INC<br>PO BOX 82527<br>LINCOLN, NE 68501 | Taxpayer(s)<br>SCHOOLCRAFT COMMUNITY COLLEGE DIST<br>18600 HAGGERTY RD<br>LIVONIA, MI 48152-3932003 |
| | Identifying Number(s)<br>38-1685740 |

A notice of levy was served on you and demand was made for the surrender of:

☒ All property, rights to property, money, credits and bank deposits of the taxpayer(s) named above, except as provided in 6332(c) of the Internal Revenue Code--"Special Rule For Banks." See the back of this form regarding this exception.

☐ Wages, salary and other income, now owed to or becoming payable to the taxpayer(s) named above.

---

**The box checked below applies to the levy we served on you.**

**Release of Levy**

☒ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits of the taxpayer(s) named above are released from the levy.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

---

**Release of Property from Levy**

☐ Under the provisions of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits greater than   are released from the levy. The levy now attaches only to this amount.

☐ Under the provision of Internal Revenue Code section 6343, all property, rights to property, money, credits, and bank deposits up to the amount of _ are released from the levy. The levy continues to attached to all amounts greater than _.

☐ The last payment we received from you was _ dated _. The amount the taxpayer still owes is  . When this amount is paid to the Internal Revenue Service, the levy is released. If you sent us a payment after the last payment date shown, subtract that from the amount you send now.

☐ Under the provisions of Internal Revenue Code section 6343, all wages, salary and other income ☐ **greater than** ☐ **less than** each _ now owed to or becoming payable to the taxpayer(s) named above are released from the levy.

Dated at FARMINGTON HILL, MI                                     July 15, 2021

SCPROD0000096

Page 2

## Excerpts from the Internal Revenue Code

**Sec. 6332 Surrender of Property Subject to Levy**

(c) **Special Rule for Banks**.—Any bank *(as defined in section 408(n))* shall surrender *(subject to an attachment or execution under judicial process)* any deposits *(including interest thereon)* in such bank only after 21 days after service of levy.

**Sec. 6343. Authority to Release Levy and Return Property**

(a) **Release of Levy and Notice of Release**.—

(1) **In general**.—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made *(if any)* that such levy has been released if—

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,

(B) release of such levy will facilitate the collection of such liability,

(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or

(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) **Expedited determination of certain business property**.—In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) **Subsequent lev**y.—The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) **Return of property**.— If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return . . . an amount of money equal to the amount of money levied upon . . . . An amount equal to the amount of money levied upon . . . may be returned at any time before the expiration of 2 years from the date of such levy. . . .

(d) Return of Property in Certain Cases.—If—

(1) any property has been levied upon, and

(2) the Secretary determines that—

(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,

(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,

(C) the return of such property will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the Taxpayer Advocate) and the United States, the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

**Useful Item You may want to see:**

• Publication 4528, Making an Administrative Wrongful Levy Claim Under Internal Revenue Code (IRC) Section 6343(b).

• Publication 5149, Making an Administrative Return of Property Claim Under Internal Revenue Code (IRC) Section 6343(d)