## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SCHOOLCRAFT COMMUNITY
COLLEGE DISTRICT,

Case No. 23-cv-11719

Plaintiff,

Hon. Brandy R. McMillion

v.

UNITED STATES OF AMERICA,

Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 43)

Before the Court is Defendant United States of America's ("the Government")

Motion to Dismiss (ECF No. 43). The Government moves for dismissal of

Schoolcraft Community College District's ("Schoolcraft's") Second Amended

Complaint (ECF No. 41) for lack of subject matter jurisdiction and failure to state a

claim. *See generally* ECF No. 43. Schoolcraft's Complaint seeks reasonable cause

abatement and refund of the $219,900 penalty (plus interest) that it was assessed for

failing to timely file the W-2 and W-3 informational returns for tax year 2017 (the

"2017 Filing Penalty"). *See generally* ECF No. 41; *see also* 26 U.S.C. § 6724 (Count

III – Reasonable Cause Waiver) and § 7422 (Count IV – Claim for Refund). It also

seeks refund on two constitutional grounds: the Eighth Amendment's Excessive

1

Fines Clause (Count I) and the Fifth Amendment's Due Process Clause (Count II). *See* ECF No. 41, PageID.565-568.  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion to Dismiss (ECF No. 43).

## I.

Prior to its 2017 filing failure, Schoolcraft had a history of timely filing its informational tax returns, with only one minor exception in 2016.  *See* ECF No. 41, PageID.549.  It was on track to timely file its 2017 returns by the January 31, 2018 deadline as well: it had completed the W-2s by January 26th and made them available to employees on January 29th and 30th.  *Id.* at PageID.552.  But due to the personal circumstances and "unforeseen confusion or miscommunication" of key employees, Schoolcraft failed to timely file nearly all—2,199 out of 2,200—of its employees' W-2 and W-3 informational tax returns for the 2017 tax year.  *Id.* at PageID.553.  As a result, it was assessed a statutory penalty of $100 per missing return, totaling $219,900.  *See* ECF No. 43, PageID.695-696; *see also* 26 U.S.C. § 6721.

Circumstances Contributing to and Following the 2017 Filing Failure

Dr. Conway Jeffress ("Dr. Jeffress") was the President of Schoolcraft in January 2018, when the returns were prepared and due.  *Id.* at PageID.550.  He was severely ill during this time, which impacted "his ability to fully supervise the various departments, including [Schoolcraft's] in-house payroll department."  *Id.*  As

2

a result, Dr. Jeffress delegated some of his duties to other members of Schoolcraft's administration. *Id.* Susan E. Sather ("Ms. Sather"), the Executive Director of Employee Financial Services, Pensions, and Disbursements, was assigned the duty of overseeing the filing of Schoolcraft's tax returns. *Id.* During this time, Ms. Sather was dealing with being the primary caretaker of her elderly father (who had end-stage Alzheimer's) and the death of her mother, which impaired her ability to do her job. *Id.* at PageID.551. Ann White ("Ms. White") was transferred to work under, and help, Ms. Sather. *See id.*

Ms. Sather and Ms. White had different understandings of who was responsible for filing the 2017 W-2s and W-3s. *See id.* Ms. Sather argues that it was Ms. White's responsibility, and that Ms. White knew this. *Id.* Ms. White claims that "at no time was [she] made aware that it was her job responsibility to file the W-2s and W-3[s] . . . and that she had never filed such informational returns before." *Id.* Both Ms. Sather and Ms. White believed the other had timely filed the returns, but neither actually had. *Id.* at PageID.554.

Schoolcraft was first notified that the W-2s and W-3s had not been filed when another Schoolcraft employee told Ms. Sather that their "Social Security Administration wage information had not been updated to include wages earned in 2017[.]" *Id.* at PageID.553. In response, Ms. Sather "immediately uploaded the files to the [Social Security Administration Business Services Online] website" on

August 1, 2018. *Id.* After correcting its filing failure, Schoolcraft implemented a "year-end Checklist" to track tax compliance and electronic filing methods that improved "efficiency, speed, and record keeping." *Id.* at PageID.555-556. And notable staffing changes were made: Ms. Sather was replaced by Sherell Jackson as Director of Payroll and Accounts Payable and Ms. White was replaced by Stephanie Ponper as Payroll and Pension Manager. *Id.* at PageID.556. Schoolcraft also engaged Jon Lamb, CPA, as Chief Financial Officer "to oversee the entire [tax filing] process." *Id.* Lamb, Jackson, and Ponper now meet on a weekly basis to discuss tax filing processes and compliance. *Id.*

The Government's Communications with Schoolcraft and Levy of Funds

A Government Revenue Officer ("RO") met face-to-face with Schoolcraft in September 2019 about the filing penalty. ECF No. 41, PageID.557; ECF No. 47-1, PageID.839. Initially, Schoolcraft was cooperative, but eventually Schoolcraft administration stopped responding to the RO. *See* ECF No. 47-1, PageID.839. Then, with the onset of the pandemic in March 2020, the Government "halted [all] enforcement activities" until late June 2020. ECF No. 41, PageID.556. The next attempt to communicate with Schoolcraft was not until June 24 and 25, 2020, when RO Toniessia Williams ("RO Williams") called Schoolcraft. *Id.* at PageID.558. But there was no answer, and the call was not returned. *Id.*; ECF No. 47-1, PageID.872-873. "Of course, the pandemic was still in the early stages at this time and most

4

[Schoolcraft] employees were working remotely, especially during the summer months." ECF No. 41, PageID.558.

On March 12 and June 1, 2021, the Government issued Form 668A Notices of Levy to Schoolcraft's third-party servicers, including Nelnet Business Solutions Inc. ("Nelnet"). ECF No. 47-1, PageID.874-875. The Nelnet account held tuition and other payments from Schoolcraft's students. ECF No. 41, PageID.559-560. Schoolcraft asserts that it never received, nor was it aware of, a Notice of Intent to Levy. *Id.* at PageID.558; ECF No. 41-7, PageID.828. After being notified of the levy by one of the third-party recipients, Schoolcraft's power of attorney ("POA") contacted the Government and spoke with acting general manager, Kerry A. Graveline ("GM Graveline"). ECF No. 47-1, PageID.876. The POA asked that the levies be released, and notified GM Graveline that he was going to submit for an abatement of the penalty. *Id.* GM Graveline agreed to release the levies that day and told the POA that he would need to "discuss and start a new plan for resolution" of the penalty with RO Williams. *Id.* The POA also "acknowledge[d] that . . . abatement on [the 2017 W-2s and W-3s] will most likely not be granted." *Id.*

As promised, Form 668-D Releases of Levy/Releases of Property from Levy were issued that day, on July 15, 2021. *Id.* at PageID.876-878. A few days later, on July 19, 2021, RO Williams and Schoolcraft's POA got on a call to plan next steps for resolution. *See id.* at PageID.881. The parties established on this call that

Schoolcraft needed to submit any unfiled returns and penalty abatement requests by August 2, 2021. *Id.* at PageID.881. If Schoolcraft did not comply, the levies would be enforced. *Id.*

The day after this call, the Government seized $233,375.63 from Nelnet. ECF No. 41, PageID.559-560 ("Of the funds seized, $219,900.00 was applied [to] penalties and $13,475.63 was applied to interest."). The POA spoke with RO Williams about the seizure the next day, July 21, 2021. *Id.* at PageID.560; ECF No. 47-1, PageID.884. RO Williams told the POA that "GM advised if proceeds were issued prior to levy released on 7/15/2021, RO will apply payments per levy. [But i]f funds are drawn on 7/15/21 or after then RO will return funds with copy of levy release to levy source." *Id.* On a later call that day, RO Williams notified the POA that he was going to return the levy payment to Nelnet "because the check [was] dated 07/15/2021[.]" *Id.* at PageID.885. However, "based on review of the case by [Government's] Area Counsel", the Government ultimately decided to not return the levied funds. ECF No. 47-1, PageID.888.

Schoolcraft's Appeal of the 2017 Filing Penalty

Schoolcraft filed an appeal and request for abatement with the IRS on August 16, 2021. ECF No. 41, PageID.562. Although it was assigned to the Ogden, Utah office on August 17, 2021, Schoolcraft never received confirmation that the appeal was accepted or had been ruled on. *Id.* Schoolcraft believes the appeal was lost or

6

misplaced in the IRS system because of the COVID-19 pandemic backlog. *Id.* On September 13, 2022, Schoolcraft filed a Form 843 "Claim for Refund and Request for Abatement." *See* ECF No. 47-1, PageID.801. As its reason for the request, it checked the form box that stated: "Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax." ECF No. 47-1, PageID.801.

Schoolcraft received three letters from the IRS that indicated a reply would be forthcoming: one on January 3, 2023 stating a reply would be provided in sixty days; another, two days later, on January 5, 2023 stating a reply would be provided in ninety days; and one on March 15, 2023 stating a "complete response" would be provided in sixty days. ECF No. 41, PageID.562-563. On January 26, 2023, the IRS sent Schoolcraft a letter denying its request for penalty abatement and refund. *See* ECF No. 47-1, PageID.809-812. The letter also included the procedures for appealing to the IRS Independent Office of Appeals. *See id.* Schoolcraft appealed to the Independent Office of Appeals in a "Request for Penalty Appeal" letter to Kristine M. Cuthbert, Service Center Penalty Appeals Coordinator, dated February 16, 2023. *Id.* at PageID.814. "After nearly two (2) years on appeal, no decision has been rendered." ECF No. 41, PageID.564. Schoolcraft brought this action on July 28, 2023. *See generally* ECF No. 1.

7

After some discovery, the parties stipulated for Schoolcraft to file a Second Amended Complaint. *See* ECF No. 40; *see also* ECF No. 16 (Schoolcraft's First Amended Complaint). Schoolcraft's Second Amended Complaint was filed on August 15, 2024. *See* ECF No. 41. The Government filed the present Motion to Dismiss on September 16, 2024. *See* ECF No. 43. The motion is fully briefed. *See* ECF Nos. 45, 46. Because the issues are adequately briefed, the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f).

## II.

"Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). When considering a motion to dismiss under Rule 12(b)(1), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Prince*, 869 F.3d 392, 397 (6th Cir. 2017). The standard of review for a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction depends on whether the defendant makes a factual or facial challenge to subject-matter jurisdiction. *See L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023).

A factual attack challenges the jurisdictional facts set forth in the complaint, and thus forces the district court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.* A

facial attack on subject-matter jurisdiction, as in this case, does not challenge the factual allegations, but challenges the jurisdictional sufficiency of the complaint while taking the allegations within as true. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In matters regarding subject matter jurisdiction, the court may look to evidence outside the pleadings. *Nichols v. Muskingum Coll.*, 318 F.3d 647, 677 (6th Cir. 2003).

In reviewing a 12(b)(6) motion, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The Court "must 'construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted). Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III.

### A. Subject Matter Jurisdiction

The Government argues that this Court lacks subject matter jurisdiction over Counts I, II, and IV because Schoolcraft did not specifically include these legal theories, nor the facts that support them, within their administrative claim for refund. *See* ECF No. 43, PageID.697-701.  Schoolcraft counters that the determinative jurisdictional question is whether its tax refund claim fairly put the Government on notice of the claims they bring here.  ECF No. 45, PageID.760.  It argues that the Court should consider not only what is on the face of the refund claim, but what information "would [have been] ascertained during an investigation and otherwise apprise[d] the IRS of the pertinent facts." *Id.*  According to Schoolcraft, if the claims before the Court are based on these same operative facts, the Court can exercise jurisdiction because there is "no substantial variance" as to the claims originally alleged. *Id.* at PageID.762.

The Court disagrees that the jurisdictional prerequisites are as forgiving as Schoolcraft describes.  Before a plaintiff may bring suit in district court, they must first file a claim for refund with the IRS.  26 U.S.C. § 7422(a); *McDonnell v. United States*, 180 F.3d 721, 722 (6th Cir. 1999).  As explained in Treasury Regulation § 301.6402–2(b)(1), that claim must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the

10

exact basis thereof."  26 C.F.R. § 301.6402-2.  A federal court in a refund action is without jurisdiction to consider any claims for the refund that were not "specifically set forth in the claim for refund itself."  *Est. of Bird*, 534 F.2d 1214, 1219 (6th Cir. 1976).  In other words, the Court does not have "jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim."  *McDonnell*, 180 F.3d at 722.

This "substantial variance" rule "bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS."  *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000).  The purpose of the rule is "to prevent surprise, and to give the IRS adequate notice of the claim and its underlying facts so that it can make an administrative investigation and determination regarding the claim."  *McDonnell*, 180 F.3d at 722.  Considering this purpose, courts have found claims within their jurisdiction that were not explicitly on the face of a taxpayer's refund claim, but were considered by the Commissioner in its investigation.  *See United States v. Standard Oil Co.*, 158 F.2d 126, 130 (6th Cir. 1946) (finding there is an "accepted principle that a taxpayer who brings suit after a claim for refund . . . can rely for recovery only on grounds presented to *or considered by* the Commissioner") (emphasis added); *see also Am. Fin. Grp. v. United States*, 726 F. Supp. 2d 802, 811 (S.D. Ohio 2010) (finding the court had jurisdiction because "the

Government clearly had the opportunity to discuss and resolve the matters raised administratively . . ."); *Ford v. United States,* 20 A.F.T.R.2d 5033, 5044 (W.D. Ky. 1967), *aff'd*, 402 F.2d 791 (6th Cir. 1968) (exercising jurisdiction over a bad-debt deduction, even though the face of the refund claim argued only the Commissioner improperly determined an understatement in earned income because the computation of the earned income included the "bad debt" items).

Here, the basis of Schoolcraft's tax refund claim is the Form 843 it filed on September 13, 2022.  26 C.F.R. § 301.6402-2(c); ECF No. 41, PageID.562, 584, ECF No. 47-1, PageID.801.  As set out above, Schoolcraft indicated that the reason for the request for refund or abatement was "[r]easonable cause or other reason allowed under the law (other than erroneous written advice)[.]"  ECF No. 47-1, PageID.801.  It further explained in the form's "Explanation" section:

> Taxpayer requests reasonable cause abatement of the failure to file information return timely, or Appeals' review.  IRS Issued L2413P dated 8/6/21 and prior POA requested Appeal on 8/16/2021 (see faxes attached).  Appeal was never assigned by IRS and IRS levy proceeds were received to fully pay info penalty on 7/20/21.  See attached letters from taxpayer and prior POA that explain that W-2/W-3 were timely issued and transmitted to SSA.  It's unclear why the electronic submission was either not accepted or even timely input, but the taxpayer operated on good faith in meeting the W-2/3 issuance and filing requirements.  We have been attempting to resolve during the Covid lockdown.

*Id.*

The Court will evaluate whether this sufficiently confers subject matter jurisdiction as to each of Schoolcraft's claims.

12

*1. Violation of the Eighth Amendment Excessive Fines Clause (Count I)*

Nothing in the Form 843 raises an Eighth Amendment claim or would have fairly put the Government on notice that Schoolcraft intended to raise that claim. The only mention Schoolcraft makes that the fine is "excessive" is in its "Request for Penalty Appeal" Letter dated February 16, 2023. *See* ECF No. 47-1, PageID.814-816. But that mention was made in the context of a requested reduction via the IRS's Internal Revenue Manual, not the Eighth Amendment. *See id.* ("If for some reason the penalties were found applicable we believe the $219,900 penalty is excessive and should be reduced to $5,000 *through procedures of IRM 8.22.8.15*.") (emphasis added). The Eighth Amendment claim is an entirely new argument that Schoolcraft brings for the first time in this suit. Accordingly, Schoolcraft is jurisdictionally barred from raising that argument now. *See Wood v. United States*, 693 F. Supp. 452, 455-56 (E.D. La. 1988), *aff'd*, 863 F.2d 417 (5th Cir. 1989).[1]

*2. Claim for Refund under § 7422(a) for Wrongful Levy and Estoppel (Count IV)*

The face of the Form 843 mentions the levy proceeds, but does not assert that they were wrongfully collected. *See* ECF No. 47-1, PageID.801. Nor does it

---

[1] The Court notes that even it had jurisdiction, it doubts Schoolcraft's ability to state a claim because the penalty at issue here is not a "fine" contemplated by the Eighth Amendment's Excessive Fines Clause. *RSBCO v. USA*, No. 3:21-CV-01192, 2022 WL 20686934, at *2 (W.D. La. July 5, 2022)*; cf. Shah v. Comm'r*, 208 F.3d 215 (6th Cir. 2000) ("[T]his court has concluded that fraud penalties do not violate [the Excessive Fines Clause] because the penalties do not constitute punishment, but rather are designed to permit the government to recoup the costs of discovering and investigating the fraud.").

mention any statements made by IRS officers that Schoolcraft relied on. *See id.* Schoolcraft states in the Request for Penalty Appeal Letter: "We have been attempting to resolve this penalty throughout the Covid government shutdowns, and at one point we believed it was resolved with an abatement but yet the penalty still remains . . ." ECF No. 47-1, PageID.814.  However strong the connection between these statements and Schoolcraft's current wrongful levy and estoppel claim seems in hindsight, these scant assertions are too vague and attenuated to have put the IRS on notice that Schoolcraft was attempting to raise a wrongful levy and estoppel argument as a basis for refund. *Cf. Washington v. United States*, No. 3:20-cv-05801-TSH, 2021 WL 199279 (N.D. Cal. Jan. 20, 2021) (finding sufficient that the taxpayer included in their Form 843 that the request for refund was based on "an illegal levy on wages").  Although Schoolcraft is correct that the IRS had access to its History Transcript and the Releases of Levy during its investigation, possession of the information alone is not enough for the Court to conclude that the Commissioner considered wrongful levy or estoppel as a ground for refund. *See Standard Oil Co.*, 158 F.2d at 130.  This is not a situation where the current claim is a more definite statement of a general, earlier-raised claim for refund.  The Court cannot say that the Commissioner clearly had the opportunity to discuss and resolve this ground for

refund during the administrative process.  *Am. Fin. Grp.*, 726 F. Supp. 2d at 811.

Thus, the Court finds it does not have jurisdiction over Schoolcraft's estoppel claim.[2]

### 3.  *Violation of the Fifth Amendment Due Process Clause (Count II)*

Schoolcraft alludes to its due process claim in the Form 841, by stating: "prior

POA requested Appeal on 08/16/2021 . . . . Appeal was never assigned by IRS . . ."

ECF No. 47-1, PageID.801.  Still, this lone assertion is not detailed enough to confer

subject matter jurisdiction on this Court over Schoolcraft's due process claim.  Thus,

the court does not have jurisdiction over Schoolcraft's claim for refund based on due

process violations.[3]

---

[2] The Court also doubts Schoolcraft's ability to state a claim for refund for Wrongful Levy or Estoppel.  The Court notes that the validity of the levies goes to the question of whether the Government properly collected the penalty from Nelnet, which Schoolcraft lacks standing to sue for.  *See* 26 U.S.C. § 7426 ("If a levy has been made . . . any person (*other than the person against whom is assessed the tax out of which such levy arose*) who claims . . . that such property was wrongfully levied upon may bring a civil action against the United States . . .") (emphasis added); *McGinness v. U.S., I.R.S.*, 90 F.3d 143, 145 (6th Cir. 1996) (finding a prerequisites for establishing a § 7426 waiver of sovereign immunity is that "the person asserting the wrongful levy claim must not be one against whom the tax is assessed").  And the Court questions whether § 7422(a) contemplates *refund* based on an improper levy.  *Compare Pereos v. United States*, No. CV-N-99-478-ECR(PHA), 2001 WL 283809, at *3 (D. Nev. Feb. 12, 2001) *with* INTERNAL REVENUE SERVICE, *How do I get a levy released?* (last reviewed or updated Aug. 22, 2024), available at: https://www.irs.gov/businesses/small-businesses-self-employed/how-do-i-get-a-levy-released [https://perma.cc/FYS2-7AZS] ("The release of a levy *does not mean you don't have to pay the balance due*.  You must still make arrangements with the IRS to resolve your tax debt or a levy may be reissued.").

[3] The Court notes that had Schoolcraft sought declaratory or injunctive relief, rather than a refund, failure to raise the Due Process argument in its administrative claim would not have deprived this Court of subject matter jurisdiction.  *See Jahn v. Regan*, 610 F. Supp. 1269 (E.D. Mich. 1985) (finding the plaintiff could not pursue a refund claim under § 7422(a) because they failed to comply with the jurisdictional prerequisites, but nonetheless allowing plaintiff to bring the same due process claim seeking injunctive or declaratory relief).  Still, any declaratory or injunctive relief the Court could have provided would have been futile, because any relief granted under the Due

## B. Stating a Claim

The Government also argues that Schoolcraft has failed to state any of its four claims. *See* ECF No. 43, PageID.701-724. Having found that it lacks subject matter jurisdiction over Counts I, II, and IV, the Court will only address the sufficiency of Schoolcraft's pleadings as to Count III (Reasonable Cause Waiver).

Pursuant to 26 U.S.C. § 6724(a): "No penalty shall be imposed . . . with respect to any failure if it is shown that such failure is due to reasonable cause and not to willful neglect." 26 U.S.C. § 6724(a). The Government concedes that the filing failure was not due to willful neglect. *See* ECF No. 43, PageID.711-720. Treasury Regulation § 301.6724-1 defines the circumstances sufficient for reasonable cause:

> The penalty is waived for reasonable cause only if the filer establishes that either—
>
> (i)   There are significant mitigating factors with respect to the failure, as described in paragraph (b) of this section; or
>
> (ii)  The failure arose from events beyond the filer's control (impediment), as described in paragraph (c) of this section.
>
> (iii) Moreover, the filer must establish that the filer acted in a responsible manner, as described in paragraph

---

Process Claim would be granted at the same time as the Reasonable Cause Waiver claim. In other words, were the Court to declare the Government failed to provide pre-deprivation notice and an opportunity to be heard, and ordered the Government to return the levied funds to Nelnet, this would not be effective until this Court had decided whether Schoolcraft was entitled to abatement and refund of the penalty. Any benefit Schoolcraft could have derived from possession of the levied funds while its reasonable cause abatement claim was litigated cannot be realized at this point.

> (d) of this section, both before and after the failure occurred.

26 C.F.R. § 301.6724-1.[4]  To establish there was reasonable cause, Schoolcraft can satisfy either the mitigating factor prong *or* the impediment prong, but in either case must also demonstrate it satisfied the responsible manner prong.  *See* 26 C.F.R. § 301.6724-1(a)(iii).   The Government argues Schoolcraft has failed to sufficiently plead as to any of these three prongs.  The Court will address each in turn.

### 1.  Mitigating Factor

Section 301.6724-1(b) articulates a non-exhaustive list of mitigating factors. *See* 26 C.F.R. § 301.6724-1 ("The applicable mitigating factors include, but are not limited to . . ."). Relevant to Schoolcraft, this list includes as a mitigating factor:

> (2) The fact that the filer has an established history of complying with the information reporting requirement with respect to which the failure occurred.  In determining whether the filer has such an established history, significant consideration is given to—
> a. Whether the filer has incurred any penalty under § 301.6721–1, § 301.6722–1, or § 301.6723–1 in prior years for the failure; and
> b. If the filer has incurred any such penalty in prior years, the extent of the filer's success in lessening its error rate from year to year.

*Id.*  Schoolcraft alleges that it timely filed its W-2 and W-3 informational returns in three of the four years preceding the 2017 filing failure.  ECF No. 41, PageID.549 ("Filings of W-2s and W-3s . . . in tax years 2015, 2014, and 2013 were timely.").

---

[4] The Court will refer to these as the "mitigating factor" prong, the "impediment" prong, and the "responsible manner" prong, respectively.

Although its Complaint admits that 2016 was not timely filed, it clarifies that it was only 1 day late and was addressed and resolved with the Government.  *See id.*; *see also* ECF No. 47-1, PageID.837 (listing a § 6721 fine for $323.25 for tax year 2016).

The Government argues that the filing failure in 2016 prevents Schoolcraft from demonstrating that it has an established history of compliance.  The Court disagrees.  *Cf. RSBCO v. USA*, No. 3:21-CV-01192, 2022 WL 2015604, at *7 (W.D. La. June 6, 2022) (finding sufficient for establishing the mitigating factor prong that the taxpayer had recently accrued no filing penalties even though it had been penalized for filing failures in five previous years).  The Court also finds unpersuasive the Government's argument that the Court should consider the penalties Schoolcraft was assessed in the years following the 2017 filing failure.  *See* ECF No. 43, PageID.711.  The regulation specifically directs the Court to consider whether any penalties were incurred "in prior years."  *See* 26 C.F.R. § 301.6724-1(b)(2)(i).  Future penalties might impact the Court's determination of whether Schoolcraft acted in a responsible manner, but that has no bearing on this prong.  Accordingly, the Court finds Schoolcraft's allegations are sufficient for establishing a mitigating factor.

    *2. Impediments*

Impediments—or "events which are generally considered beyond the filer's control"—include:

(i)    The unavailability of the relevant business records (as described in paragraph (c)(2) of this section),

(ii)   An undue economic hardship relating to filing on magnetic media (as described in paragraph (c)(3) of this section),

(iii)  Certain actions of the Internal Revenue Service (IRS) (as described in paragraph (c)(4) of this section),

(iv)  Certain actions of an agent (as described in paragraph (c)(5) of this section), and

(v)   Certain actions of the payee or any other person providing necessary information with respect to the return or payee statement (as described in paragraph (c)(6) of this section).

§ 301.6724-1(c)(1).  The filer must also show that that the failure was "due to" the alleged impediments.  *Id.*

Schoolcraft seems to allege that it was impeded by the illnesses and personal circumstances of the employees responsible for filing the 2017 W-2s and W-3s.  *See generally* ECF No. 41, PageID.550-552.  Ultimately, however, it alleges that the filing failure was due to the "unforeseen confusion or miscommunication [that] existed between Ms. Sather and Ms. White" as to who was supposed to file the returns.  *Id.* at 553 ("*As a consequence*, neither Ms. Sather nor Ms. White filed these informational returns timely by January 31, 2018.") (emphasis added).  No matter how unforeseen it was that there would be an inter-employee miscommunication in the wake of Dr. Jeffress's illness and the delegation of his duties to Ms. Sather and/or Ms. White, it cannot be said that this confusion was beyond Schoolcraft's control in a way contemplated by the regulation.

19

Nor has Schoolcraft alleged facts that demonstrate that reasonable cause can be imputed based on the actions of Ms. Sather and Ms. White as its agents. *See* § 301.6724-1(c)(5). To establish it was impeded by the actions of its agents, a filer must show:

> (i)  [It] exercised reasonable business judgment in contracting with the agent to file timely correct returns or furnish timely correct payee statements with respect to which the failure occurred. This includes contracting with the agent and providing the proper information sufficiently in advance of the due date of the return or statement to permit timely filing of correct returns or timely furnishing of correct payee statements; and
>
> (ii) The agent satisfied the reasonable cause criteria set forth in paragraph (b) [mitigating factors] or one of the reasonable cause criteria set forth in paragraph (c)(2) through (6) of this section.[5]

§ 301.6724-1(c)(5). The allegations regarding Ms. Sather and Ms. White cannot satisfy either the mitigating factors criteria or the remaining reasonable cause criteria under paragraph (c). Although Unavailability of Business Records under paragraph (c)(2) contemplates unavailability based on "[t]he unavoidable absence (e.g., due to death or serious illness) of the person with the sole responsibility for filing a return or furnishing a payee statement"—like Dr. Jeffress, or perhaps even Ms. Sather—Schoolcraft's own allegations refute that the W-2s or W-3s were "unavailable" for filing. *See RSBCO v. United States*, 104 F.4th 551, 559 (5th Cir.

---

[5] "Unavailability of relevant business records" (§ 301.6724-1(c)(2)); "Undue economic hardship relating to filing on magnetic media" ((c)(3)); "Actions of the IRS" ((c)(4)); "Actions of the payee or any other person" ((c)(6)).

2024), cert. denied, No. 24-561, 2025 WL 76488 (U.S. Jan. 13, 2025) (holding that

"'death, serious illness, or unavoidable absence of the filer' is enumerated only as a

'supervening event' justifying the 'unavailability of the relevant business records'");

*see also* ECF No. 41, PageID.552 (stating the W-2s were available on January 26,

2018).  Thus, Schoolcraft has not established an impediment sufficient to state a

claim for reasonable cause abatement.   Nevertheless, because Schoolcraft has

sufficiently alleged a mitigating factor, the Court moves on to the responsible

manner prong.

> ### 3. Responsible Manner

Recall that Schoolcraft's allegations must plausibly show it acted in a

responsible manner both before and after the failure occurred.  26 C.F.R. § 301.6724-

1(a)(2)(iii).   Acting in a responsible manner means: (1) that the filer exercised

reasonable care, and (2) that the filer undertook significant steps to avoid or mitigate

the failure.  26 C.F.R. § 301.6724-1(d)(1).  Reasonable care is defined as "that

standard of care that a reasonably prudent person would use under the circumstances

in the course of its business in determining its filing obligations and in handling

account information such as account numbers and balances."  *Id.*  The regulation

also includes a non-exhaustive list of significant mitigating steps, including:

> (A) Requesting appropriate extensions of time to file, when
> practicable, in order to avoid the failure,

 (B) Attempting to prevent an impediment or a failure, if it was foreseeable,

 (C) Acting to remove an impediment or the cause of a failure, once it occurred, and

 (D) Rectifying the failure as promptly as possible once the impediment was removed or the failure was discovered.

§ 301.6724-1(d)(1)(ii)(D).  "Ordinarily, a rectification is considered prompt if it is made within 30 days after the date the impediment is removed or the failure is discovered . . ." *Id.*

 Schoolcraft alleges that "[b]etween 2017 and January 2018" it had in place "internal processes" and "checklists" to ensure that "the W-2s and W-3[s] [were] filed timely by the January 31 deadline."  ECF No. 41, PageID.549.  It also alleges that the W-2s were finalized by January 26, 2018—four days before the filing deadline.  *Id.* at PageID.552.  Notably, when it became aware in late summer 2018 that the W-2s and W-3s had not been filed, it "immediately" uploaded the files.  *Id.* at PageID.553-554 ("Between July 2018 and August 1, 2018, [Schoolcraft] acted as promptly as possible to rectify the failure . . . as soon as it discovered the failure."); *see also* ECF No. 47-1, PageID.826.

 After correcting the filing failure on August 1st, Schoolcraft implemented improved internal processes, including, a new "year-end Checklist" to track tax compliance and electronic filing methods that improved "efficiency, speed, and record keeping."  ECF No. 41, PageID.556; *see also* ECF No. 47-1, PageID.841-

842.   There were also significant staffing changes: Ms. Sather was replaced as Director of Payroll and Accounts Payable and Ms. White was replaced as Payroll and Pension Manager.  ECF No. 41, PageID.556.

The Government argues that Schoolcraft's allegations of checklists and internal processes to ensure timely filing are "inconsistent with and contradicted by its later allegations about the events that directly caused the failure."  ECF No. 43, PageID.719; *see also* ECF No. 46, PageID.786 ("Schoolcraft's ignorance of [the] confusion [between Ms. Sather and Ms. White] is, as a matter of law, [] not the standard of care that a reasonably prudent person would use under the circumstances.").  By this the Government seems to argue that there is no feasible way a filing error would have occurred if Schoolcraft had been acting in a responsible manner.  This is an unpersuasive expansion of the standard; reasonably prudent people are not mistake-proof.  It is plausible at this stage that Schoolcraft was acting in a responsible manner and, nevertheless, the 2017 filing failure occurred.  Thus, the Court finds these allegations sufficient to state that Schoolcraft acted in a responsible manner both before and after the filing failure.

Because Schoolcraft sufficiently alleged a mitigating factor and that it acted in a responsible manner before and after the filing failure, the Court finds that it has adequately pleaded a claim for Count III (Reasonable Cause Waiver).

## IV.

Based on the foregoing, the Court finds it lacks subject matter jurisdiction over Schoolcraft's Eighth Amendment claim (Count I), its Due Process claim (Count II), and its claim for refund based on wrongful levy and estoppel, under 26 U.S.C. § 7422(a) (Count IV).   Thus, it **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 43).   It is **GRANTED** as to Counts I, II, and IV of Schoolcraft's Complaint.   But because the Court finds Schoolcraft has adequately stated a claim for Reasonable Cause Waiver under 26 U.S.C. § 6724 (Count III), the Defendant's Motion to Dismiss is **DENIED** as to Count III.

**IT IS SO ORDERED.**

Dated: March 21, 2025                    s/Brandy R. McMillion
                                         BRANDY R. McMILLION
                                         United States District Judge